institution and processing of money order and/or checks, because all of the money order and/or checks bret mailed to the institution were physically altered, in that my name was just written on the front of them at the top and/or over the original name. see exhibit F. This is a copy of one of the checks processed onto my trust account and some copies of envelopes they arrived in, and were sent to me, once the funds were processed onto my account. When the court looks at the check, exhibit F, it is obviously physically altered and therefore fraudulent; consequently, I would ask the court to determine, how the fraudulent check was processed onto my account, along with 10 others, that were all physically altered? see exhibit D, @ p.4.

Now finally after 10 or 11 obviously physically altered money orders and/or checks were processed onto my trust account, account clerk II G. shepherd, see exhibit D, @ p.8, notices two incoming checks were fraudulent, see exhibit H, along with the two page letter from bret, and reports this to the security and investigation unit of the institution. Even later two more fraudulent money orders arrive at the institution that were confiscated, see exhibit i.

Next is a copy of my trust account activity, see exhibit J. The court will notice as the fraudulent money orders were posted onto my trust account, that very person would deduct Court filing fees I owed to the courts, @ 4/27; and 5/05 to forward to the different courts, which accounted for 239.59 dollars of the funds lost by the CDCR. Now getting back to the actual hearing in front of Lieutenant J. sigler see exhibit F, @ p. 6-12, the Lieutenant explains what evidence he is basing his decision on, to find me guilty, of possession of stolen property and check fraud. When the court looks at the evidence, exhibit F, @ p. 6-12, it will notice Lieutenant J. sigler is basically basing

his decision of my guilt, on the reports of the CDCR employees who discovered the fraudulent introduction of money orders and/or checks into the institution and that is all.

lets be reasonable, had I been able to view any of these physically altered money orders and/or checks prior to them being processed onto my trust account I would have alerted the staff or if I had been able to receive the two page letter bret wrote me, that was confiscated prior to be delivered to me, I would have alerted staff. I have been housed at Calipatria State prison for 13 some odd years and this is my first 115. I am not a dope fiend; nor do I drink alcohol; nor do I smoke cigarettes; Consequently, why would I all of the sudden need money? My past behavior, circumstancially is an indicator of future behavior. I had no knowledge bret was sending stolen money orders and/or checks in my name to the institution. Right after the actual 115 hearing in front of Lieutenant J. Syler, I found out bret was found dead in san bernardino county, see exhibit K, I believe bret was suffering from dementia, due to atherosclerosis and coupled with the methamphetamine and alcohol use, see exhibit L, rendered brets cognitive skills at best, as rudimentary.

I would have certainly welcomed a prosecution in the imperial court, so I would have been able to establish I did not know bret was mailing stolen money orders and/or checks to the institution in my name, so as to settle this whole matter, but I would argue the investigative services unit recognized they had no evidence to prove I knew bret was mailing stolen money orders and/or checks to the institution in my name and consequently decided to not even refer the matter to the imperial county district attorney's office, see exhibit M.

C.

# JURISDICTION

The California Constitution, article VI § 10; article I § 11 and the federal Constitution, article I § 9 explicitly recognized habeas corpus petitions. Habeas corpus petitions is the appropriate remedy to seek restoration of lost good time credits. Preiser v Rodriguez 1973 411 US 475. The habeas corpus petition should first be filed in superior court. In re ramirez 2001 89 CA4th 1312, court of appeal has discretion to deny habeas writ on ground that application for writ has not been made to lower court. Also see In re Hillery 1962 202 CA2d 293, 294. The proper venue lies in the county of the petitioners confinement when conditions of confinement are challenged. In re lumbert 1980 113 CA3d 316.

# ARGUMENT
# I
# STANDARD OF REVIEW

In re Dikes 2004 18 cal rptr 3d 9, Cal-app 1. Dist, @ p. 11-14, The legislature has granted the CDCR broad authority for the discipline of prisoners in state prison (penal code § 5054) including the authorization to promulgate regulations governing discipline. see In re Scott 2003, 113 CA4th 38. "A good time credit is a prospective benefit that depends on the prisoners sustained good behavior and is subject to review and withdrawal for cause by the disciplinary board. While the CDCR cannot interpret regulations arbitrarily or capriciously, it does not abuse its discretion when it has some basis in fact for its decision. (Ibid). A prison disciplinary action must be supported by "some evidence". Superintendent v Hill 1985 472 US 445.

Due process requires procedural protections before a prisoner can be

deprived of a protected liberty interest in good time credits. Wolff v McDonnell 1974 418 us 529. In wolff, the court held that before being stripped of good time credits, an inmate must receive certain minimum due process protections, including written notice of the claimed violation, an opportunity to be heard and to call witnesses and a written statement detailing evidence relied on and reasons for the disciplinary action. (Id. @p. 563-567).

In Superintendent v Hill supra 472 us @p.454, the united states supreme court held, that the requirements of due process in a prison disciplinary action are satisfied "if" some evidence supports the decision by the prison disciplinary board to revoke good time credits. In determining whether the evidentiary standard is satisfied, the relevant question is, whether there is any evidence in the record that could support the conclusion reached by the disciplinary board? (Id. @p. 455-456).

## ARGUMENT
### II

PETITIONERS DUE PROCESS RIGHTS WERE VIOLATED BY THE FINDING OF GUILT ON THE SERIOUS RULE VIOLATION AND STATED SANLTION, LOSS OF 150 GOOD TIME CREDIT DAYS

In the serious rule violation, petitioner was charged with possession of stolen property and check fraud.

To sustain a conviction for possession of stolen property, three prongs must be established, 1) the property must be stolen; 2) defendant must know the property is stolen; 3) defendant must have had possession of the stolen property. People v Myles 1975 50 CA3d 423. DOMINANCE and

0048

8.

control are essentials of possession and they cannot be inferred by from mere presence or access. Something more must be shown to support inferring these elements.

In this instance, there is no evidence in the CDCR Record that I knew the money orders and/or checks that were arriving at the institution trust office, via the united states mail, were stolen, as I never saw any of them prior to the trust office processing them onto my account, exhibit D, @ p.2 paragraph six. "Although inmate Jones wasn't in a position to view the incoming checks." Consequently, the 2nd and 3rd prong cannot be substantiated.

To sustain a conviction for check fraud, 1) the defendant must present the check as genuine, 2) knowing it is not, 3) with the intent to defraud. People v Jackson 1979 92 CA 3d 556.

An intent to defraud is an intent to deceive another person for the purpose of gaining a material advantage over the person. People v Booth 1998 48 CA4th 1247.

In this instance, there is no evidence in the CDCR Record that I tried to present the stolen money orders and/or checks to the trust account office at the institution, as all of the fraudulent money orders and/or checks were delivered to the institutional trust office via the united states mail.

Lieutenant J. Sigler is basing his decision of my guilt in this matter on the fact that I am housed in the CDCR as a convicted felon and therefore I am presumed guilty of every subsequent allegation.

Petitioner of the writ of habeas corpus has the burden of proof, to establish a prima facie case for relief. Evidence code § 115 Burden of Proof means the obligation of a party to establish by evidence a requisite degree of belief concerning a fact in the mind of the court. A writ of habeas corpus is not the ultimate relief sought by the petitioner, but rather, it is a interim step in determining whether the petitioner is entitled to relief.

If the habeas petition states a prima facie case for relief, the court must issue an order to show cause. Then the parties litigate the merits. People v Romero 1994 8C4th 728, 737; California Rules of Court, Rule 4.551 (a) (4)(A), (c)-(d).

Petitioner would argue the burden of proof required of him, is proof by, a preponderance of evidence.

Preponderance of evidence is usually defined in terms of probability of truth, or of evidence that when weighed with the opposed to it, has more convincing force and greater probability of truth. Leslie.G v Perry and associates 1996 43 CA4th 472.

Evidence code § 140, Evidence means testimony, writing ... presented to the senses that are offered to prove the existence or nonexistence of a fact.

Evidence code § 190 Proof is the establishment by evidence of a requisite degree of belief concerning a fact in the mind of the court.

Lets look at the theory of the CDCR, exhibit E, @ p.2, second paragraph, "on July 5, 2006 CAL investigative service unit (ISU) completed an investigation into inmate Jance and an accomplice outside of prison (bret Jance) attempting to "launder" money through the institution. During the investigation it was determined that inmate Jance was working with bret Jance, who would send him stolen checks and money orders in an attempt to have the money placed on inmate Jances books (trust account). Once the money was received by CAL and placed on his books he would then send ½ of the money back and keep the remaining money. The money being sent back to bret Jance, would be sent via a state of California check and thus be clean money".

Petitioner would argue the CDCR was able to form this theory, once they received the one letter bret wrote me, but that was confiscated, exhibit H, befor delivery to me by officer corada, exhibit D, @ p. 5.

Petitioner would argue, circumstantially, the two page letter from bret to

10.

me, exhibit H, does establish I did not know bret was mailing stolen money orders and/or checks to the institution in my name. In the letter, dated May 16, 2006, bret explains he is sending "over 10,000, so once this clears your account, do me a favor, could you take half of that and send it back to me in a state of California check" and at the end of the letter bret writes, "if your approached on where money comes, you don't know, ok". This letter was written to me in response to the two letters I had written bret, exhibit A @ p. 1-2, when I originally started to receive the empty envelopes from him, as the letter starts, exhibit H, "got your letter the other". In my two original letters to bret I asked him what was going on, with all of these funds he was sending me? The letter from bret was written May 16, 2006, which is after he had already mailed 10 or 11 fraudulent money orders and/or checks to the institution in my name, exhibit D, @ p. 3, numbers 1-6; consequently, "if" I had some agreement with bret to "launder" stolen funds through the CDCR trust account office, why would bret be explaining his scam to me—requesting I send him half of the money once it clears? And then why would he instruct me, "if your approached on where money came, you don't know, ok"; if I supposedly knew about this "launder" scam prior? I did not even attempt to send any funds to bret, via a state of California check, because I had no idea what bret was doing or why he was mailing me all of these money orders and/or checks.

In deciding whether petitioner has met his burden of proof, the court should consider direct and circumstantial evidence and all reasonable inferences to be drawn therefrom.

Proof is the effect of evidence, the establishment of a fact by evidence, and is something more than evidence. People V Mahoney 1939 13 C2d 729.

Mere conjecture, surmise or suspicion is not the equivalent of reasonable inference and does not constitute proof. People v Bender 1945 27 crd 164.
Petitioner would argue Lieutenant J. Sigler based his decision of my guilt on his suspicion of me, because I am housed as a convicted felon in the CDCR and therefore I am presumed guilty of every subsequent allegation.

# ARGUMENT
## III
## FACTUAL ISSUES IN DISPUTE SHOULD BE SETTLED

In this instance a evidentiary hearing should be held to determine factual issues. In re lawler 1979 23 C3d 190, 194, in that, how did obviously physically altered money orders and/or checks get processed onto my trust account, as funds available for me to spend? In the 2nd level reply to the inmate appeal 602, exhibit N, @ p. 3, third paragraph, Coordinator O. Bell does pose this question to trust account office technician W. Neciuk, to which Mr. Neciuk stated, "we should have visually caught it in the beginning, due to you could tell inmate Jones's name was obviously typed over the original name printed on the check".
A superior court entertaining a habeas petition is required to conduct an evidentiary hearing if a reasonable likelihood exists that the petitioner is entitled to relief and the entitlement depends on resolving a factual issue California Rules of Court, Rule 4.551 (f).

# CONCLUSION

The court entertaining a petition for a writ of habeas corpus has broad powers to fashion almost any relief. In re Marquez 2003

0052     12.

30 C4th 14 , award of custody credits ; In re Harrell 1970 2 c3d 675, 706 modification of conditions of prison confinement.

Petitioner would respectfully request of the court to reverse the finding of guilt as to the serious Rule violation 115 and to restore the 150 good time days credit to petitioner. To order all reference of the serious rule violation 115 be removed from petitioner's cock file.

13.

8. Did you appeal from the conviction, sentence, or commitment?  ☒ Yes.  ☐ No.  If yes, give the following information:

a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"): _____

b. Result _____N / A_____    c. Date of decision: _____N / A_____

d. Case number or citation of opinion, if known: _____N / A_____

e. Issues raised:  (1) _____

    (2) _____

    (3) _____

f. Were you represented by counsel on appeal?  ☒ Yes.  ☐ No. If yes, state the attorney's name and address, if known:

    _____N /A_____

9. Did you seek review in the California Supreme Court?  ☒ Yes  ☐ No.   If yes, give the following information:

a. Result _____N / A_____    b. Date of decision: _____

c. Case number or citation of opinion, if known: _____N / A_____

d. Issues raised:  (1) _____

    (2) _____

    (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

    _____N / A_____

    _____

11. Administrative Review:

a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].)  Explain what administrative review you sought or explain why you did not seek such review:

    _____I sought administrative remedies at all levels, to include the_____

    _____directors level of review. See attached inmate appeal 602, exhibit N._____

    _____

    _____

    _____

    _____

    _____

    _____

b. Did you seek the highest level of administrative review available?  ☒ Yes.  ☐ No.
   *Attach documents that show you have exhausted your administrative remedies.*

MC-275 (Rev. July 1, 2005)                    PETITION FOR WRIT OF HABEAS CORPUS

0054

14.

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court?  ☐ Yes. If yes, continue with number 13.  ☐ No. If no, skip to number 15.

13.  a.  (1) Name of court: _____

(2) Nature of proceeding (for example, "habeas corpus petition"): _____

(3) Issues raised: (a) _____

(b) _____

(4) Result (Attach order or explain why unavailable): _____

(5) Date of decision: _____

b.  (1) Name of court: _____

(2) Nature of proceeding: _____

(3) Issues raised: (a) _____

(b) _____

(4) Result (Attach order or explain why unavailable): _____

(5) Date of decision: _____

c.  For additional prior petitions, applications, or motions, provide the same information on a separate page.

14.  If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

_____

15.  Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)

_____

16.  Are you presently represented by counsel?  ☐ Yes.  ☒ No. If yes, state the attorney's name and address, if known:

_____

17.  Do you have any petition, appeal, or other matter pending in any court?  ☐ Yes.  ☒ No. If yes, explain:

_____

18.  If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court: This petition is filed in the lowest court.

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: April 23, 2007

▶ _____
(SIGNATURE OF PETITIONER)

MC-275 [Rev. July 1, 2005]                PETITION FOR WRIT OF HABEAS CORPUS

0055

# *VERIFICATION*

## STATE OF CALIFORNIA
## COUNTY OF IMPERIAL

(C.C.P. SEC.446 & 201.5; 28 U.S.C. SEC. 1746)

I, _Bobby Shawn Janoe_ DECLARE UNDER PENALTY OF PERJURY THAT: I AM THE _declarant_ IN THE ABOVE ENTITLED ACTION; I HAVE READ THE FOREGOING DOCUMENTS AND KNOW THE CONTENTS THEREOF AND THE SAME IS TRUE OF MY OWN KNOWLEDGE, EXCEPT AS TO MATTERS STATED THEREIN UPON INFORMATION, AND BELIEF, AND AS TO THOSE MATTERS, I BELIEVE THEM TO BE TRUE.

EXECUTED THIS _23rd_ DAY OF: _April_ , 2007 AT CALIPATRIA STATE PRISON, CALIPATRIA, CALIFORNIA #92233-5002.

(SIGNATURE) _Bobby S. Janoe_
(DECLARANT/PRISONER)

## *PROOF OF SERVICE BY MAIL*

(C.C.P. SEC.1013 (a) & 2015.5; 28 U.S.C. SEC.1746)

I, _Bobby Shawn Janoe_ AM A RESIDENT OF CALIPATRIA STATE PRISON, IN THE COUNTY OF IMPERIAL, STATE OF CALIFORNIA. I AM OVER THE AGE OF EIGHTEEN (18) YEARS OF AGE AND AM / NOT A PARTY OF THE ABOVE-ENTITLED ACTION. MY STATE PRISON ADDRESS IS: P.O. BOX 5002. CALIPATRIA, CALIFORNIA #92233-5002.

ON _April 23_ 2007 I SERVED THE FOREGOING: _____

_Petition for writ of habeas corpus_

### (SET FORTH EXACT TITLE OF DOCUMENTS SERVED)

ON THE PARTY (S) HEREIN BY PLACING A TRUE COPY (S) THEREOF, ENCLOSED IN A SEALED ENVELOPE (S), WITH POSTAGE THEREON FULLY PAID, IN THE UNITED STATES MAIL, IN A DEPOSIT BOX SO PROVIDED AT CALIPATRIA STATE PRISON, CALIPATRIA, CALIFORNIA #92233-5002.

Superior Court of California
County of imperial
939 Main street
el centro CA 92243

attorney general office
110 West A street, Suite 1100
San diego CA 92101

THERE IS DELIVERY SERVICE BY UNITED STATES MAIL AT THE PLACE SO ADDRESSED, AND THERE IS REGULAR COMMUNICATION BY MAIL BETWEEN THE PLACE OF MAILING AND THE PLACE SO ADDRESSED. I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

DATE: _April 23, 2007_ _Bobby S. Janoe_

(DECLARANT/PRISONER)

EXHIBIT

A

RECEIVED CAL APPEALS SEP 2 5 2006

RECEIVED CAL APPEALS SEP 2 9 2006

RECEIVED CAL APPEALS OCT 2 0 2006

1    A 0602524

DECLARATION

I BOBBY SHAWN JANOE DO DECLARE THE FOLLOWING:

1. I do have personal knowledge of the facts stated herein and could testify to there truth if called as a witness.

2. Approximately the third week of April 2006,I was talking with my mother,Marilyn Janoe,on the telephone.  She mentioned that my brother Brian Scott Janoe had ran into Bret Harvey Janoe's former wife by accident;that brian went to visit with Bret;that Bret stated he was doing good;that Bret was distressed to learn Bobby Shawn Janoe was in prison at Calipatria State Prison;that Bret stated he would try to send Bobby some funds when he could.

3. I was skeptical about the news of Bret,and did not want to talk about Bret,as he had stolen my property about 20 years earlier and did disappear.

4. Approximately the last week of April 2006 I received two envelopes with no letter in them,but there was numerical writing on the outside of the envelope and some other writing,about obtaining a attorney for me.  I had no idea what was going on since I had not spoken to Bret in 20 years.  I thought Bret was feeling guilty about stealing my property 20 years earlier and was trying to make amends by sending funds.

5. I wrote Bret and thanked him for the funds and told him not to give any funds to a attorney until he had spoken to me prior.

6. Approximately May 3,2006 I turned in a trust account withdrawal order to counselor Nava,for 99.00 dollars to my mother for financial aid.

7. I turned in a ducat for 75.00 dollars to go to canteen.

SCREENED OUT    SEP 2 5 2006

SCREENED OUT    SEP 2 9 2006

SCREENED OUT    OCT 0 6 2006

0058

RECEIVED CAL APPEALS   SEP 14 2006
RECEIVED CAL APPEALS   SEP 14 2006
RECEIVED CAL APPEALS   OCT 0 6 2006
RECEIVED CAL APPEALS   OCT 2 0 2006

1 │ Approximately the 4th or 5th of May 2006,I received three more

2 │ envelopes from Bret,with no letter inside,but with some numerical

3 │ writing on the outside of the envelopes.

4 │ 9. I wrote Bret once again thanking him for the funds and asked

5 │ him what is going on.

6 │ 10.Approximately May 24,2006 I turned in a trust account withdra-

7 │ wal order to counselor Nava for 1,100.00 dollars to my mother for

8 │ financial aid.

9 │ 11. I cannot remember when,but I did receive another envelope

10 │ from Bret with some numerical writing on the outside of the

11 │ envelope,but no letter inside.

12 │ 12. Approximately June 19,2006 the security and investigations

13 │ unit rushed to my assigned cell in the am.  They threw my property

14 │ all over the cell and proceeded to confiscate every piece of

15 │ paper in the cell;all letters;phone books;and photos.  I asked

16 │ officer Canada what the problem was,but he refused to respond.

17 │ I was escorted back to my assigned cell after the search was

18 │ completed.

19 │ 13. Approximately June 20,2006 officer Crittendon and Sergeant

20 │ Rutledge returned all of my property,minus the six envelopes I

21 │ had received from Bret.  Officer crittendon asked me to sign the

22 │ Cell/Locker search receipt,to acknowledge they confiscated the

23 │ six envelopes I had received from Bret and I did.  I asked

24 │ officer Crittendon what was going on,but he refused to even

25 │ discuss the matter at all.  I asked Sergeant Rutledge what was

26 │ going on,but he too refused to discuss the matter at all.

27 │ 14. Approximately June 28,2006 I turned in a trust account with-

28 │ drawal order to counselor Nava for 350.00 dollars to the federal

SCREENED OUT   SEP 2 5 2006
SCREENED OUT   SEP 2 9 2006
SCREENED OUT   OCT 0 6 2006

0059

RECEIVED CAL APPEALS   SEP 2 2006   A 0602524

court in San Diego California.

RECEIVED CAL APPEALS   OCT 0 6 2006

15. I turned in a ducat for 50.00 dollars to go to canteen.

RECEIVED CAL APPEALS   OCT 2 0 2006

16. Approximately July 5,2006 I turned in a trust account with-

drawal order to counselor Nava for 100.00 dollars to go to the

Superior Court in El Centro California.

17. Approximately July 10,2006 I spoke to a counselor in 1

housing building about my trust account,as my trust account with-

drawals were not being processed.

18. Approximately July 11,2006 I requested officer rodriguze to

contact the trust account office to see what the problem was with

my trust account.  I spoke to Miss Weitceil in the trust account

office,who stated that Lieutenant Straton had put a freeze on the

withdrawal of any funds from my account.

19. Approximately July 12,2006 I was called to go to the program

office on A-Yard,wherein facility captain Nelson and Lieutenant

Straton informed me that I was being issued a serious rule

violation(115)for possession of stolen property and check fraud.

20. On July 13,2006 I typed up a letter to Miss Weitceil,making

a request that a notation be placed on my trust account,so that

no personal checks be accepted for placement onto to my trust

account ever again.

21. Approximately July 14,2006 I received a copy of my trust

account activity,wherein funds were being withdrawn from my

account.

22. Approximately July 16,2006 I typed up a letter to Miss

Weitceil in the trust account office,explaining that funds were

being withdrawn from my account and that those funds were

illgotten and no one could lay claim to those funds until the

SCREENED OUT   SEP 2 5 2006   3 SCREENED OUT   OCT 0 6 2006
SCREENED OUT   SEP 2 9 2006

RECEIVED CAL APPEALS  SEP 2 5 20
RECEIVED CAL APPEALS  SEP 2 9 2006

investigation was completed.    **CAL**    **A  0602524**

RECEIVED CAL APPEALS  OCT 0 6 2006

3        I declare under penalty of perjury under the laws of the

RECEIVED CAL APPEALS  OCT 2 0 2006

4    state of California, the foregoing is true and correct.  This

5    declaration was executed on July 16,2006,at calipatria California.

6

7                              _____
                                   Bobby Shawn Danoe
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCREENED OUT    SEP 2 5 2006            4
SCREENED OUT    SEP 2 9 2006        SCREENED OUT    OCT 0 6 2006



B

RECEIVED CAL APPEALS  SEP 2 5 2009
RECEIVED CAL APPEALS  SEP 29 2006
RECEIVED CAL APPEALS  OCT 2 0 2006

DECLARATION

I, BRIAN SCOTT JANOE DO DECLARE THE FOLLOWING:

1. I do have personal knowledge of the facts stated herein, of Bret Harvey Janoe contacting Bobby Shawn Janoe in the months of April to May 2006, and could testify to there truth if called as a witness.

2. Approximately the second week of April 2006, I ran into Bret's former wife by accident. I had not seen Bret in approximately 20 years. Bret's former wife took me to see Bret. Upon meeting Bret, he stated to me that he was doing good and staying out of trouble. Bret asked about Bobby Shawn Janoe, as to how he was doing. Bret was distressed to learn Bobby Shawn Janoe was in prison at Calipatria state Prison. Bret stated to me that he would try to send Bobby Shawn Janoe some funds when he could.

3. To be honest, I did not believe Bret's comment's as we talked, but I wanted to believe he had changed for the better, and gave him the benefit of the doubt, as to there truthfulness.

4. In the next few days, as I saw my mother(Marilyn Janoe)I was talking with her and explained I had seen Bret and that he was doing good; that he was distressed to learn Bobby Shawn Janoe was in prison; that Bret said he would try to sent Bobby Shawn Janoe some funds when he could. My mother was skeptical of Bret and really did not want anything to do with him. She warned me to stay away from Bret.

I declare under penalty of perjury under the laws of the state of California, the foregoing is true and correct. This declaration was executed on 7-/8 2006 in Rialto California.

Brian Scott Janoe

SCREENED  Brian Scott Janoe

SCREENED OUT  SEP 2 5 2006
SCREENED OUT  SEP 2 9 2006

0063

EXHIBIT

C

A 0802524

RECEIVED CAL APPEALS   SEP 2  2006

RECEIVED CAL APPEALS   SEP 2 9 2006

RECEIVED CAL APPEALS   OCT 0 6 2006

RECEIVED CAL APPEALS   OCT 2 0 2006

DECLARATION

1   I, MARILYN JANOE, DO DECLARE THE FOLLOWING:

2

3   1. I do have personal knowledge of the facts stated herein, of Bret

4   Harvey Janoe contacting Bobby Shawn Janoe in the months of April

5   to May 2006, and could testify to there truth if called as a

6   witness.

7   2. Approximately the second or thrid week of April 2006 as I

8   talked with my son Brian scott Janoe he mentioned to me that he

9   had ran into Bret Harvey Janoe's former wife; that he had went to

10  talk with Bret; that Bret said he was doing good; that Bret was

11  distressed to learn Bobby Shawn Janoe was in prison at calipatria

12  State Prison; that Bret would try to send Bobby Shawn Janoe some

13  funds when he could.  I warned Brian to stay away from Bret as he

14  could not be trusted.  I told Brian the last time I had seen Bret

15  was about 20 years ago, as he had stole some property from my

16  house that belonged to me and some property that belonged to

17  Bobby Shawn Janoe, and Bret disappeared.

18  3. Approximately the thrid week of April 2006 as I spoke to Bobby

19  Shawn Janoe on the telephone, I mentioned that Brian had seen Bret

20  and Bret said he was doing good and would try to send him some

21  funds when he got a chance.  Bobby Shawn Janoe was skeptical of

22  Bret and really did not want to talk about Bret, as Bret had stolen

23  his property 20 years earlier.

24

25      I declare under penalty of perjury under the laws of the

26  state of California, the foregoing is true and correct.  This

27  declaration was executed on  7-18   2006 in Rialto California.

28

Marilyn Janoe
_____
Marilyn Janoe

SCREENED OUT   SEP 2 5 2006

SCREENED OUT   SEP 2 9 2006

SCREENED OUT   OCT 0 6 2006

0065

EXHIBIT

D

RECEIVED CAL APPEALS SEP 25 2006

CAL A 0602524

STATE OF CALIFORNIA
**RULES VIOLATION REPORT**

DEPARTMENT OF CORRECTIONS

804 TO RECORDS:

RECEIVED CAL APPEALS SEP 29 2006

| CDC NUMBER | INMATE'S NAME | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|
| J-25333 | JANOE | | CSP-CAL | A1-150 | 07-06-A-005 |

| VIOLATED RULE NO(S). | SPECIFIC ACTS | LOCATION | DATE | TIME |
|---|---|---|---|---|
| CCR #3015 | POSSESSION OF STOLEN PROPERTY AND CHECK FRAUD | A1-150 | 07/05/06 | 1000 HRS. |

RECEIVED CAL APPEALS OCT 06 2006

CIRCUMSTANCES

RECEIVED CAL APPEALS OCT 0 9 2006

On Wednesday, July 5, 2006, Security and Investigations Unit concluded its investigation into numerous' altered checks received at Calipatria State prison (CAL) for Inmate Janoe (J-25333, A1-150).

On Tuesday, June 13, 2006, at approximately 1000 hours, Security and Investigations (S&I) Officer #5 V. Canada received 2 separate original checks serial #146931907 for the amount of **$5,727.19** and serial #146931908 for the amount of **$5,190.87** from Calipatria State Prison (CAL) Inmate Trust Account Office Personnel. CAL Accounting Office received the checks on May 17, 2006 via United State Postal Services.

The checks were endorsed for payment to J. Robert West MD Inc, P.O. Box 2150, Redlands Ca. 92373-0701 with Inmate Janoe, J25333/A1-150 name and CDCR number typed in bold letters and underlined underneath the original endorsee. National Heritage Insurance Company (NHIC) generated the checks.

RVR continued on CDC-115 Part C

| REPORTING EMPLOYEE (Typed Name and Signature) | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|
| ► (4) CRITTENDON Correctional Officer | 7/11/06 | S&I Officer #7 | Sun/Mon |

| REVIEWING SUPERVISOR'S SIGNATURE | DATE | ☐ INMATE SEGREGATED PENDING HEARING | |
|---|---|---|---|
| ► O. VALDEZ, Correctional Sergeant | | DATE N/A | LOC. N/A |

| CLASSIFIED | OFFENSE DIVISION: | DATE | CLASSIFIED BY (Typed Name and Signature) | HEARING REFERRED TO | | | |
|---|---|---|---|---|---|---|---|
| ☐ ADMINISTRATIVE | | 7/1/06 | ► | | | | |
| ☐ SERIOUS | | | | ☐ HO | ☐ SHO | ☐ SC | ☐ FC |

COPIES GIVEN INMATE BEFORE HEARING

| ☐ CDC 115 | BY: (STAFF'S SIGNATURE) | DATE | TIME | TITLE OF SUPPLEMENT | | |
|---|---|---|---|---|---|---|
| ✗ | ► | 7/1/06 | 1440 | | | |
| ☐ INCIDENT REPORT LOG NUMBER: | BY: (STAFF'S SIGNATURE) ► | DATE | TIME | BY: (STAFF'S SIGNATURE) ► | DATE | TIME |

HEARING

| REFERRED TO ☐ CLASSIFICATION | ☐ BPT/NAEA | | | |
|---|---|---|---|---|
| ACTION BY: (TYPED NAME) | | SIGNATURE ► | DATE | TIME |
| REVIEWED BY: (SIGNATURE) ► | DATE | CHIEF DISCIPLINARY OFFICER'S SIGNATURE ► | DATE | |
| ☐ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | SEP 25 2006 | BY: (STAFF'S SIGNATURE) ► SCREENED OUT OCT 06 2006 | DATE | TIME |

CDC 115 (7/88)

SCREENED OUT SEP 29 2006

0067

CAL    A 0602524

STATE OF CALIFORNIA
REV. COURT OF APPEALS OCT 2 0 2005
**RULES VIOLATION REPORT - PART C**

DEPARTMENT OF CORRECTIONS
PAGE 2 OF 8

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| J-25333 | JANOE | 07-06-A-005 | CSP-CAL | 07/05/06 |

☐ SUPPLEMENTAL    ☒ CONTINUATION OF:    ☒ 115 CIRCUMSTANCES    ☐ HEARING    ☐ IE REPORT    ☐ OTHER

The Security and Investigations Unit discovered that 10 altered checks were mailed to Inmate Janoe, J25333/A1-150 from his brother, Brett H. Janoe, from April 27, 2006 through May 30, 2006.

Brett H. Janoe is currently in custody at the West Valley Detention Facility, San Bernardino Sheriff's Dept., for Burglary. The Security & Investigations Unit was able to verify that 5 of the checks were confirmed stolen and 4 of the following checks were deposited into Janoe's trust account. (See attached copies of Trust Account Statement).

1. $2,021.51, #010006 from Phoenix Millwork Distributors, Inc. deposited on 4-27-06.
2. $1,298.02, #6872 from Millwork Products, Inc. deposited on 4-27-06.
3. $222.20, Stater Bros. Inc, Money Order #47644617207 deposited on 4-27-06
4. $239.98, Travelers Express, Money Order #47541474860

The total amount deposited in Janoe's Inmate Trust account totals some **$3,771.71 dollars**

Inmate Janoe's current balance in his trust account is $4,345.03.

Although Inmate Janoe wasn't in a position to view the incoming checks, Inmate Janoe received monthly statements from the Calipatria Accounting Dept, indicating deposits to his account had been made, which would have given him knowledge of his account activities and current funds balance available.

On July 3, 2006, CAL Accounting Dept. reported, Janoe's deposits into his account from April 27, 2006 through May 30, 2006 was approximately $4,909.53 dollars.

A cash withdrawal in the amount of $530.30 dollars was withdrawn from the account prior to CAL Accounting's discovery of the altered checks.

A review of Janoe's Trust Account Statement and activity prior to the $2,021.51 dollar deposits on April 27, 2006 clearly indicated an available **zero** balance.

Inmate Janoe is not a participant in the Mental Health Services Delivery System.

Inmate Janoe is aware of this report.

| SIGNATURE OF WRITER | DATE SIGNED |
|---|---|
| S. CRITTENDON, Correctional Officer | 7/11/06 |
| GIVEN BY: (Staff's Signature) | DATE SIGNED: 7-12-06 | TIME SIGNED: 1440 |

☒ COPY OF CDC 115-C GIVEN TO INMATE

C 115-C (5/95)

0068

STATE OF CALIFORNIA    RECEIVED CAL APPEALS OCT 2 0 2005    DEPARTMENT OF CORRECTIONS

**RULES VIOLATION REPORT - PART C**

PAGE __3__ OF __8__

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| J-25333 | JANOE | 07-06-A-005 | CSP-CAL | 07/05/06 |

| ☐ SUPPLEMENTAL | ☒ CONTINUATION OF: | ☒ 115 CIRCUMSTANCES | ☐ HEARING | ☐ IE REPORT | ☐ OTHER |
|---|---|---|---|---|---|

The third (3rd) check serial #206430 was generated by East Valley Water District (EVWD), P.O. Box 3427 San Bernardino Ca, for the amount of $3.187.00 with a hand written letter enclosed, dated 5-16-06 from Brett Janoe.

CAL Accounting Office received the checks on May 17, 2006. The checks are endorsed to Inmate Janoe, J25333, by typing in bold letters over the original endorsee name. A hand written 2-page letter, dated 5-16-06 was also enclosed with check #206430 and stated the following: The hand written letter indicated that "Bret Janoe" has a court case coming up next month and he needs to raise **$300,000.00 dollars** to fight his case from the streets.

Bret's homeboy (unknown at this time) enclosed **$5,000 dollars** for you (Referring to Inmate Janoe) plus another $5,000.00 dollars. Bret tells (Inmate Janoe) once it clears his account, take half of it and send the other half (**$5,000.00 dollars**) back to him in a State of California check. (See attached)

On June 23, 2006, (CAL) Accounting Dept Personnel reported that Inmate Janoe submitted a Trust Account Withdrawal Order dated, May 25, 2006 for the amount of **$1100.00** dollars, for Financial Assistance to his mother Marilyn Janoe, P.O. Box 843, Rialto Ca. 92377. (See attached copy of Janoe's Inmate Trust Withdrawal Form) On June 20, 2006, at approximately 1130 hours, I conducted a cell search inside Inmate Janoe's cell and discovered the following 6 empty envelopes. (See attached copies of envelopes)

1. Envelope dated April 24, 2006 with a return address with the name Brett Janoe, P.O. Box 651, Running Springs, Ca. 92382 containing 2 money orders #47644617207 and #08-488156874 for a combined total in the amount of $222.20.

2. Envelope dated April 24, 2006 with a return address with the Initials B.J., 651, RS, Ca. 92382, with check #010006 for the **amount of $2,021.51** with a hand written note from Brett Janoe telling his brother Inmate Janoe, *"Let me know what you need!"* *"I'll send more money in a couple of days"*.

3. Envelope dated April 24, 2006 with a return address with the Initials B.J. 652, RS, Ca. 92382 with check #6872 **for the amount of $1,298.02** with a hand written note of check amounts and balances from Inmate Janoe.

4. Envelope dated May 02, 2006 with a return address P.O. Box 651 R. S. Calif. 92382 containing 3 money orders #7-41909243, **#47541474860 for the amount of $239.98**, #48035015842.

5. Envelope dated May 02, 2006 with a return address P.O. Box 651 R.S. Calif. with checks #8164598 and #724788.

6. Envelope dated May 30, 2006 with no return address with check #206430 for the amount of **$3,187.00 dollars** written on it.

On Thursday, June 21, 2006, at approximately 1530 hours, San Bernardino Sheriff's Dept. Twin Peaks Detective Pelkey called. Detective Pelkey confirmed that Bret Harvey Janoe and 2 other suspects were arrested for a Burglary of a United States Post Office on May 31, 2006, and are currently in West Valley Detention Facility, located in San Bernardino Ca. (Report #050602045).

RVR continued on CDC 115 Part C

| SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|
| S. CRITTENDON, Correctional Offuicer | | 7/11/06 |
| GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
| | 7-12-06 | 1440 |

☒ COPY OF CDC 115-C GIVEN TO INMATE

CDC 115-C (5/95)

0069

STATE OF CALIFORNIA        RECEIVED CAL APPEALS    OCT 2 0 2005              CAL   A 0602524
                                                                            DEPARTMENT OF CORRECTIONS
RULES VIOLATION REPORT - PART C                                             PAGE 4 OF 8

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| J-25333 | JANOE | 07-06-A-005 | CSP-CAL | 07/05/06 |

☐ SUPPLEMENTAL   ☐ CONTINUATION OF:   ☐ 115 CIRCUMSTANCES   ☐ HEARING   ☐ IE REPORT   ☒ OTHER

Inmate Janoe was provided copies of the following documents:

Five (5) of the checks listed below were confirmed stolen by the Security & Investigations Units, 4 of the following checks and/or money orders were deposited into Janoe's trust account.

1. Deposit of **$2,021.51**, #010006 from Phoenix Millwork Distributors, Inc.
2. Deposit of **$1,298.02**, #6872 from Millwork Products, Inc.
3. Deposit of **$222.20**, "Stater Bros. Inc", Money Order #47644617207.
4. Deposit of **$239.98**, Travelers Express, Money Order #47541474860.
5. Deposit of **$111.72**, from an unknown source at this time.
6. Deposit of **$100.00**, from an unknown source at this time.
7. Deposit of **$530.98**, from an unknown source at this time.
8. Deposit of **$152.30**, from an unknown source at this time.
10. Deposit of check # 8164598, **$225.74**, from an unknown source at this time.
11. Deposit of check # 7247788, **$503.98**, from an unknown source at this time.
12. Check serial #146931907 for the amount of **$5,727.19**
13. Check serial #146931908 for the amount of **$5,190.87**
14. Check serial # 206430 for the amount of **$3,187.00**
15. Handwritten latter dated 5/16/06. (2 pages)
16. CDC-193 Trust Account Withdrawal Order dated May 25, 2006 for the amount of **$1100.00** signed by Inmate Janoe and noted and dated 5/29/06 by a CC1 staff member.
17. Six (6) enveloped addressed to Inmate Janoe notating items #1 through #11 listed above as being enclosed.
18. Handwritten calculations of amounts received recovered from Inmate Janoe's cell by S&I Officer Crittendon on June 20, 2006.
19. CDC Inmate Trust Account Activity report for Inmate Janoe (J-25333). (2 pages)
20. Memorandum dated June 13, 2006, authored by V. Canada, Security and Investigations.

| SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|
| S. CRITTENDON, Correctional Officer | | 7/11/06 |
| GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
| x | 7-12-06 | 1446 |

☒ COPY OF CDC 115-C GIVEN TO INMATE

CDC 115-C (5/95)

0070

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

PAGE 5 OF 8

**RULES VIOLATION REPORT - PART C**

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| J-25333 | JANOE | 07-06-A-005 | CSP-CAL | 07/05/06 |

☒ SUPPLEMENTAL  ☐ CONTINUATION OF:  ☐ 115 CIRCUMSTANCES  ☐ HEARING  ☐ IE REPORT  ☐ OTHER

On Tuesday, June 13, 2006, at approximately 1000 hours, while performing my duties as Security & Investigations (S&I) Officer #5, I received two (2) separate envelopes addressed to Inmate Bobby Janoe J25333/A1-150 from the Inmate Trust Account Office Technician W. Neciuk. The first letter contained two (2) separate checks entitled "Medicare Payment", both made out to J. Robert West MD Inc. P.O. Box 2150 Redlands, CA 92373-0701 and to Bobby Janoe #J25333 in a visibly bolder font, (see attached copies). The first check serial number was #146931908 made in the amount of $5,190.87 and the second check serial number was #146931907 made in the amount of $5,727.19. The second envelope contained a letter dated "5-16-06" and a third check from East Valley Water District" written to "Bobby Janoe #J25333" PO Box 5069 San Bernardino, CA 92412-5069. It should be noted Inmate Janoe's name is in a visibly bolder font and appears to be written over another person's name. The serial number is 206430 and made in the amount of $3,187.00. The envelopes of both the first and second check were postmarked San Bernardino May 17, 2006. The return address for both envelopes was:

"B
Box 651
R.S., Ca 92382"

I advised S&I Sergeant (Sgt.) S. Rutledge of the information and placed the original envelopes, three (3) checks, and the letter into evidence locker #10 at Central Control. A copy of this report was turned over to S&I Officer S. Crittendon as part of an ongoing investigation into illegal activities by Inmate Janoe.

Security and Investigations at Calipatria State Prison will continue to monitor the activities of the inmates whose names appear in this report. Their involvement in illegal activities should be closely monitored and documented when new information is discovered.

It should be noted that the information contained in this report was originally deemed Confidential in nature due to an on going investigation. Due to the completion of the investigation it has been reclassified as non-Confidential, (refer to Memorandum #IUR 06-026, dated June 14, 2006, authored by S&I Officer S. Crittendon).

The information on this report does meet the criteria for reliability per CCR Title 15, Section 3321 (c) (4):

Part of the information provided is corroborated through investigation or by information provided by non-confidential sources.

I request a copy of this report be placed in the General Section of Inmate Janoe's J25333 Central File.

Inmate JANOE is not a participant of the Mental Health Delivery System (MHSDS).

Inmate JANOE is aware of this report.

This concludes my report.

| SIGNATURE OF WRITER | DATE SIGNED |
|---|---|
| V. Canada, Correctional Officer | 7 11 06 |

| GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|
| | 7-12-06 | 1446 |

☒ COPY OF CDC 115-C GIVEN TO INMATE

CDC 115-C (5/95)

0071

STATE OF CALIFORNIA

**RULES VIOLATION REPORT - PART C**

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| J-25333 | JANOE | 07-06-A-005 | CSP-CAL | 07/14/06 |

| ☐ SUPPLEMENTAL | ☒ CONTINUATION OF: | ☒ 115 CIRCUMSTANCES | ☐ HEARING | ☐ IE REPORT | ☐ OTHER |

I placed the original envelope and the (2) two money orders into evidence locker number #5 located in Central Control. A copy of this report is being submitted as a supplemental report to the ongoing investigation into illegal activies by Inmate Janoe.

S&I at Calipatria State Prison will continue to monitor the activities of those inmates whose names appear in this report. Their involvement in illegal activities should be closely monitored and documented when new information is discovered.

This information does meets the criteria for Confidentiality per California Code of Regulations (CCR), Title 15, section; §3321(c) (4). Part of the information provided is corroborated through investigation or by information provided by non-confidential sources.

I request that a copy of this report be placed in the general section of Inmate Janoe's Central File.

Inmate Janoe is not a participant of the Mental Health Delivery System (MHSDS). Inmate Janoe is aware of this report.

This concludes my report.

| SIGNATURE OF WRITER | DATE SIGNED |
|---|---|
| V. Canada, Correctional Officer | 7-17-06 |

| GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|
| | 0830 | 7-17-06 |

☐ COPY OF CDC 115-C GIVEN TO INMATE

CDC 115-C (5/95)

0072

DSP 99 2

STATE OF CALIFORNIA

RECEIVED CAL APPEALS OCT 2 0 2006

DEPARTMENT OF CORRECTIONS

**RULES VIOLATION REPORT - PART C**

PAGE 7 OF 8

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| J-25333 | JANOE | 07-06-A-005 | CSP-CAL | 07/14/06 |

☐ SUPPLEMENTAL  ☒ CONTINUATION OF:  ☒ 115 CIRCUMSTANCES  ☐ HEARING  ☐ IE REPORT  ☐ OTHER

On Friday, July 14, 2006, at approximately at approximately 0800 hours, while performing my duties as Security and Investigations (S&I) Officer #5, I was advised by S&I Sergeant (Sgt) Rutledge that two (2) additional money orders serial #57-42718592 for the amount of $287.67 dollars and serial #08-532968393 for the amount of $86.00 dollars addressed to Bobby Janoe (J-25333, A1-150) had been confiscated from Calipatria State Prison (CAL) Inmate Trust Account Office Personnel. CAL Accounting Office received the checks on July 12, 2006 via United State Postal Services. The two (2) additional money orders appeared to be stolen checks, which relate to an investigation conducted by CAL Security and Investigations Officer S. Crittedon completed on July 5, 2006, during which Inmate Janoe was identified as receiving stolen checks.

The envelope containing the (2) two money orders were addressed to:

"Bobby Janoe J-25333
Unit A1-150
P.O. Box 5002
Calipatria, Calif 92233
Enclosed $287.67
$86.00
$373.67
Enjoy Bro"

The post date on the envelope is July 12, 2006 from San Bernardino and the return address is:

"Robert"
Box 1707
S.B. Ca 92408

The first money order confiscated was from Continental Express" Money Order Company Inc. serial #57-42718592 for the amount of $287.67 dollars made payable to "Bobby Janoe, Account # J-25333". The money order was typed out, however the information was hand written in visibly bolder black ink similar to the previous checks determined to be stolen.

The second money order confiscated was from "Western Union" Money Order Company Inc. serial #08-532968393 for the amount of $86.00 dollars made payable to "Bobby Janoe, Account # J-25333". The money order was typed out, however the information was hand written in visibly bolder black ink similar to the previous checks determined to be stolen.

It should be noted that earlier checks and money orders received by Inmate Janoe contained similar handwriting covering up the true intended recipients name and personal information were determined to be stolen.

RVR continued on CDC-115 Part C

| SIGNATURE OF WRITER | DATE SIGNED |
|---|---|
| V. Canada, Correctional Officer | 7-17-06 |

| | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|---|
| COPY OF CDC 115-C GIVEN TO INMATE | | 08 | 7-17-6 |

CDC 115-C (5/95)

0073

99 25082

**A** 0602524

STATE OF CALIFORNIA

**RULES VIOLATION REPORT - PART C**

DEPARTMENT OF CORRECTIONS

PAGE 8 OF 8

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| J-25333 | JANOE | 07-06-A-005 | CSP-CAL | 07/17/06 |

| ☐ SUPPLEMENTAL | ☐ CONTINUATION OF: | ☐ 115 CIRCUMSTANCES | ☐ HEARING | ☐ IE REPORT | ☐ OTHER_____ |
|---|---|---|---|---|---|

On, May 17, 2006 at approximately 1000 hours, while performing my duties processing monies received from the institutional mail room, I discovered that check(s) serial #146931907 for the amount of **$5,727.19** and check serial **#146931908** for the amount of **$5,190.87** appeared to have been altered. Calipatria State Prison (CAL) Inmate Trust Account Office Personnel received the checks via the institutional mail. I notified Security and Investigations (S&I) Officer #5 V. Canada that I had received, 2 original checks serial #146931907 for the amount of **$5,727.19** and check serial #146931908 for the amount of **$5,190.87** endorsed for payment to a J. Robert West MD Inc, P.O. Box 2150, Redlands Ca. 92373-0701 and below the physician's name typed in bold letters and underlined, was Inmate Janoe, J25333/A1-150, underneath the original endorse. Both checks were generated by National Heritage Insurance Company (NHIC) for Medicare Payment. On Tuesday, June 13, 2006, at approximately 1000 hours, I relinquished the checks to Squad Officer Canada.

Inmate Janoe is not a participant of the Mental Health Delivery System (MHSDS).

| SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|
| G. SHEPHERD | | 7/18/06 |
| GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
| | 7-18-06 | 1105 |

☐ COPY OF CDC 115-C GIVEN TO INMATE

CDC 115-C (5/95)

0074

EXHIBIT

E

CAL A 0802524

RECEIVED CAL APPEALS SEP 29 2006

Fna COPY

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION

RECEIVED CAL APPEALS OCT 06 2006

# CRIME / INCIDENT REPORT
## PART A - COVER SHEET
CDCR 837-A (Rev. 07/05)

| PAGE 1 OF 12 | INCIDENT LOG NUMBER | INCIDENT DATE | INCIDENT TIME |
|---|---|---|---|
| | CAL-CEN-06-07-0244 | 07/20/06 | 900 |

| INSTITUTION | FACILITY | FACILITY LEVEL | INCIDENT SITE | LOCATION | | | |
|---|---|---|---|---|---|---|---|
| CAL | CEN | ☐ I ☐ II ☐ III ☒ IV | Mailroom | A1-150 | ☐ ASU ☒ SNY ☒ GP | ☐ SHU ☐ PHU ☐ RC | ☐ PSU ☐ CTC ☐ RM | SEG YARD ☐ CC ☐ WA | USE OF FORCE ☐ YES ☒ NO |

RECEIVED CAL APPEALS OCT 06 2006

| SPECIFIC CRIME / INCIDENT | |
|---|---|
| Theft in excess of $500.00 | ☒ CCR ☐ PC ☐ N/A NUMBER/SUBSECTION: 3012 |

| D. A. REFERRAL ELIGIBLE | CRISIS RESPONSE TEAM ACTIVATED | MUTUAL AID REQUEST | PIO/AA NOTIFIED |
|---|---|---|---|
| ☒ YES ☐ NO | ☐ YES ☒ NO | ☐ YES ☒ NO | ☐ YES ☒ NO |

## RELATED INFORMATION (CHECK ALL THAT APPLY OR N/A)

| DEATH | CAUSE OF DEATH | ASSAULT / BATTERY | TYPE OF ASSAULT / BATTERY | |
|---|---|---|---|---|
| ☐ INMATE ☐ STAFF ☐ VISITOR ☐ OTHER: ___ ☒ N/A | ☐ ACCIDENTAL ☐ NATURAL ☐ EXECUTION ☐ UNKNOWN ☐ HOMICIDE ☐ SUICIDE ☐ OVERDOSE ☒ N/A | ☐ ON INMATE ☐ ON STAFF ☐ ON VISITOR ☐ OTHER: ___ ☒ N/A | ☐ BEATING ☐ GASSING ☐ POISONING ☐ SEXUAL ☐ SHOOTING ☐ SLASHING | ☐ SPEARING ☐ STABBING ☐ STRANGLING ☐ OTHER: ___ ☒ N/A |

| SERIOUS INJURY | INMATE WEAPONS | | TYPE OF WEAPON / SHOTS FIRED / FORCE | | | |
|---|---|---|---|---|---|---|
| ☐ INMATE ☐ STAFF ☐ VISITOR ☐ OTHER: ___ ☐ N/A | ☐ CHEMICAL SUBSTANCE ☐ CLUB / BLUDGEON ☐ EXPLOSIVE ☐ FIREARM ☐ HANDS / FEET ☐ KNIFE ☐ SAP/SLUNG SHOT ☐ PROJECTILE ☐ SPEAR ☐ SLASHING INSTRUMENT: (TYPE) ___ ☐ STABBING INSTRUMENT: (TYPE) ___ ☐ OTHER: ___ ☐ BODILY FLUID ☐ OTHER FLUID: ___ ☐ UNKNOWN LIQUID ☒ N/A | TYPE: ☐ COMMERCIAL WEAPON ☐ INMATE MANUFACTURED WEAPON | WEAPON: ☐ MINI 14 ☐ 38 CAL. ☐ 9MM ☐ SHOTGUN LAUNCHER: ☐ 37MM ☐ L8 ☐ 40MM ☐ 40MM MULTI ☐ HFWRS FORCE ☐ EXPANDABLE BATON ☐ PHYSICAL FORCE ☐ X10 ☐ OTHER: ___ | WARNING # | EFFECT # | BATON ROUND TYPE / NO: ___ WOOD ___ RUBBER ___ FOAM ___ STINGER: .32 (A) ___ .60 (B) ___ EXACTIMPACT ___ CTS 4557 ___ XM 1006 ___ CHEMICAL ☐ OC ☐ CN ☐ CS ☒ N/A |

| ESCAPES |
|---|
| ☐ W / FORCE ☐ W/O FORCE ☐ ATTEMPTED ☐ N/A |

| CONTROLLED SUBSTANCE | WEIGHT | PROGRAM STATUS | EXCEPTIONAL ACTIVITY | |
|---|---|---|---|---|
| ☐ POSITIVE UA ☐ CONTROLLED MEDS ☐ AMPHETAMINE ☐ BARBITURATES ☐ COCAINE ☐ CODEINE ☐ HEROIN ☐ MARIJUANA/THC ☐ METHAMPHETAMINE ☐ MORPHINE ☐ OTHER: ___ ☒ N/A | ☐ WITH PACKAGING ☐ W/O PACKAGING PRELIMINARY   LAB ___ ___ ___ ___ ___ ___ ___ ___ | ☐ MODIFIED PROGRAM ☐ LOCKDOWN ☐ STATE OF EMERGENCY IF YES, LIST AFFECTED PROGRAMS: ___ ☒ N/A 8/1/06 | ☐ EMPLOYEE JOB ACTION ☐ ENVIRONMENTAL HAZARD ☐ EXPLOSION ☐ FIRE ☒ GANG/DISRUPTIVE GROUP ☐ HOSTAGE ☐ INMATE STRIKE ☐ MAJOR DISTURBANCE ☐ MAJOR POWER OUTAGE ☐ NATURAL DISASTER ☐ PUBLIC DEMONSTRATION ☐ SPECIAL INTEREST I/M | ☐ WEATHER ☐ SEARCH WARRANT ☐ ARREST ☒ OTHER: Theft in excess of $500 EXTRACTION: ☐ CALCULATED ☐ EMERGENCY ☐ N/A |

BRIEF DESCRIPTION OF INCIDENT (ONE OR TWO SENTENCES):

On Friday July 20, 2006 information was received that Calipatria State Prison would suffer a loss of in excess of $500.00 based on the actions of Inmate Janoe (J-25333, A1-150L)

COMPLETE SYNOPSIS / SUMMARY ON PART A1

| NAME OF REPORTING STAFF (PRINT/TYPE) | TITLE | ID # | BADGE # |
|---|---|---|---|
| G. STRATTON | Lieutenant | 1761045 | 34114 |

| SIGNATURE OF REPORTING STAFF | PHONE EXT. (INCIDENT SITE) | DATE |
|---|---|---|
| G Stratton | 7100 | 07/14/06 |

| NAME OF WARDEN / AOD (PRINT/SIGN) | | TITLE | DATE |
|---|---|---|---|
| L. E. SCRIBNER   SCREENED OUT   Oct 06 2006 | | Warden | 7/24/06 |

SCREENED OUT SEP 29 2006

0076

CAL   A 0602524

RECEIVED CAL APPEALS SEP 2 9 2006

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION

**CRIME / INCIDENT REPORT** OCT 06 2006
**PART A1 - SUPPLEMENT**
CDCR 837-A1 (07/05)

RECEIVED CAL APPEALS OCT 20 2006

| PAGE 3 OF 12 | INCIDENT LOG NUMBER |
|---|---|
| | CAL-CEN-06-07-0244 |

| INSTITUTION | FACILITY | INCIDENT DATE | INCIDENT TIME |
|---|---|---|---|
| CAL | CEN | 07/20/06 | 900 |

TYPE OF INFORMATION:
☐ SYNOPSIS/SUMMARY OF INCIDENT    ☐ SUPPLEMENTAL INFORMATION    ☐ AMENDED INFORMATION    ☐ CLOSURE REPORT

NARRATIVE:

ADDITIONAL INFORMATION:

Inmate Janoe will be issued a CDC 115, Serious Rules Violation Report for violation of California Code Of Regulations, Section 3012 for the specific act of Possession of Stolen Property and Check Fraud Log # 07-06-A-005, Theft.

This matter may be referred to the Imperial County District Attorney's Officer for possible felony prosecution.

ISU staff have been informed that other agencies are investigating this matter and may prosecuting this matter in a county other then Imperial

CAL ISU staff have been notified that several other law enforcement agencies are looking into this matter and may prosecute Inmate Janoe for his actions.

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL A1

| NAME OF REPORTING STAFF (PRINT/TYPE) | TITLE | ID # | BADGE # |
|---|---|---|---|
| G. STRATTON | Lieutenant | 1761045 | 34114 |

| SIGNATURE OF REPORTING STAFF | PHONE EXT. (INCIDENT SITE) | DATE |
|---|---|---|
| G. Stult | 7100 | 07/20/06 |

| NAME OF WARDEN / AOD (PRINT/SIGN) | TITLE | DATE |
|---|---|---|
| G. J. Janoe    SCREENED OUT    OCT 06 2006 | CDW/A/ | 7/21/06 |

SCREENED OUT SEP 29 2006

0077