CAL  A 0802524

RECEIVED CAL APPEALS SEP 2 9 2006  CALIPATRIA STATE PRISON
INMATE TRUST ACCOUNT STATEMENT

RECEIVED CAL APPEALS OCT 0 6 2006  FOR THE PERIOD: JUN. 01, 2005 THRU JUN. 27, 2005

ACCT. J25333   ACCT NAME JANOE, BOBBY SHAUN   ACCT TYPE: J

TRAN  RECEIVED CAL APPEALS OCT 2 0 2006

| DATE | CODE | DESCRIPTION | COMMENT | CHECK NUM | DEPOSITS | WITHDRAWALS | BALANCE |
|------|------|-------------|---------|-----------|----------|-------------|---------|
| 05/05 | W220 | STATE FILING | 15606/5943 | | | 89.79 | 4,583.35 |
| 05/08 | FC01 | DRAW-FAC 1 | A1 5964 | | | 76.00 | 4,507.35 |
| 05/15 | FR01 | CANTEEN RETUR | 506113 | | | 76.00- | 4,583.35 |
| 05/16 | W415 | CASH WITHDRAW AID | 6161 | 111079976 | | 99.00 | 4,484.35 |
| 05/19 | W516 | LEGAL COPY CH | 4/8 6255 | | | 0.20 | 4,484.15 |
| 05/19 | W516 | LEGAL COPY CH | 4/8 6255 | | | 5.50 | 4,478.65 |
| 05/19 | W516 | LEGAL COPY CH | 4/12 6255 | | | 0.10 | 4,478.55 |
| 05/19 | W513 | MISC. CHARGES ENVEL | 6256 | | | 0.45 | 4,478.10 |
| 05/19 | W513 | MISC. CHARGES ENVEL | 6261 | | | 1.80 | 4,476.30 |
| 05/19 | W513 | MISC. CHARGES ENVEL | 6261 | | | 45.50 | 4,430.80 |
| 05/23 | W512 | LEGAL POSTAGE | 04/19 6320 | | | 0.87 | 4,429.93 |
| 05/23 | W516 | LEGAL COPY CH | 05/19 6316 | | | 0.30 | 4,429.63 |
| 05/23 | W513 | MISC. CHARGES ENVELP | 6330 | | | 0.45 | 4,429.18 |
| 05/23 | W513 | MISC. CHARGES ENVELP | 6330 | | | 0.15 | 4,429.03 |
| 05/24 | W512 | LEGAL POSTAGE | 4/21 6356 | | | 4.05 | 4,424.98 |
| 05/24 | W512 | LEGAL POSTAGE | 4/21 6356 | | | 4.05 | 4,420.93 |
| 06/05 | FC01 | DRAW-FAC 1 | A1 6540 | | | 75.00 | 4,345.93 |

CURRENT HOLDS IN EFFECT

| DATE PLACED | HOLD CODE | DESCRIPTION | COMMENT | HOLD AMOUNT |
|-------------|-----------|-------------|---------|-------------|
| 06/14/2006 | H118 | LEGAL COPIES HOLD | 06/13 6807 | 0.90 |

TRUST ACCOUNT SUMMARY

| BEGINNING BALANCE | TOTAL DEPOSITS | TOTAL WITHDRAWALS | CURRENT BALANCE | HOLDS BALANCE | TRANSACTIONS TO BE POSTED |
|---|---|---|---|---|---|
| 7.88 | 4,909.53 | 571.48 | 4,345.93 | 0.90 | 0.00 |

CURRENT AVAILABLE BALANCE

4,345.03

SCREENED OUT  SEP 2 9 2006  SCREENED OUT  OCT 0 6 2006

00110

EXHIBIT

K 

RECEIVED CAL APPEALS   SEP 2 0 2006
RECEIVED CAL APPEALS   SEP 2 0 2006

CAL   A 0602524

**Division of Medical Examiner**
175 South Lena Road
San Bernardino, CA 92415-0035   SEP 29 2006
REC'D (909) 387-2561
Fax (909) 387-2989



**Frank Sheridan, M.D.**
Chief Medical Examiner

**Eugene Carpenter**
_____, M.D., Deputy M.E.

RECEIVED CAL APPEALS   OCT 0 6 2006

### San Bernardino County Sheriff's Department
### Coroner Division

RECEIVED CAL APPEALS   OCT 2 0 2006 **Autopsy Protocol**

**Coroner's Case Number:** 06-5661LD          **Autopsy Number:** A-0394-06

| | | | |
|---|---|---|---|
| **Name:** | Brett Harvey Janoe | **Age:** 44 | **Sex:** Male |
| **Time of Death:** | Reported Found 0739 hours, July 21, 2006 | | **Race:** Caucasian |
| **Time of Autopsy:** | 0900 hours, July 28, 2006 | | |
| **Place of Autopsy:** | San Bernardino County Coroner's Facility | | **Deputy:** De Nardo |

**HISTORY OF DEATH**: This is the case of a 44-year-old Caucasian male found floating in about 2 feet of water in a flood basin area. There is a past history of social distress, methamphetamine use, and possibly of diabetes. There is no history of foul play or trauma. There are no signs of trauma. Other past medical history is not given. Drug use and social stress have been the problems. No history of suicide ideation or previous suicide attempts has been given.

There is a history of pelvic fracture from a fall in the fairly recent past.

Also refer to Coroner's Investigative Report 06-5661LD.

### External Examination for Identification and for Signs of Natural Pathology:

This is the body of a 44-year-old, well-developed, well-nourished Caucasian male, about 73 inches in length and weighing 169 pounds. It has been refrigerated and is not embalmed. The body is identified by tags.

The major identifying characteristics consist of a long body, brown, medium length, straight hair, brown eyes (might be obscured by decomposition changes), handlebar moustache, unshaven face for about a week, no teeth, upper dental plate, uncircumcised penis, well-developed and not obese body; no signs of amputations, deformities, or needle track scars are seen. There are two tattoos discovered. The body is moderately decomposed and this obscures surface findings. The following is what can be discerned through the discoloration and the skin slippage.

The skin, head, head hair, eyes, ears, nose, mouth, throat, neck, chest, abdomen, pelvis with external genitalia and anus, back and extremities are all unremarkable for signs of natural pathology as best as can be seen through the obscuring signs of decomposition.

**Clothing**: There is clothing on the body. It consists of a tee shirt, boxer shorts, blue jeans with wide brown belt, white socks, and white running shoes. All of the clothing is soaked and muddy. Abundant numbers of papers are found, some of which have been placed in a plastic envelope apparently by the decedent. All of these are retrieved and are cleaned and spread out on a table for drying. No other articles are found within the pockets of the pants. There does not seem to be the presence of a suicide note, but the papers are not examined in detail at this time.

RECEIVED CAL APPEALS    SEP 2 9 2006
JANOE, AUTOPSY CONTINUED
RECEIVED CAL APPEALS    SEP 2 9 2006
PAGE 2
A-0394-06
RECEIVED CAL APPEALS    SEP 29 2006

RECEIVED CAL APPEALS    OCT 2 0 2006

CAL    A  0602524

**Evidence of Postmortem Changes**:

1. Moderate decomposition is present with universal green-brown discoloration and skin slippage. There is moderate bloating of the abdomen and scrotum. The eyes are soft. About 7 to 8 mL of fresh appearing red blood is found within the heart. The gallbladder and urinary bladder are dry. There are about 20 mL of a wine-like decomposition fluid found within the left pleural space. The right pleural space is dry. The peritoneum is dry. There is no oil. Maggots and fly eggs are not seen. Animal activity is not seen.
2. Rigor mortis: the arms are loose. There is moderate rigor mortis in the lower extremities.
3. Lividity: lividity cannot be assessed.

**Evidence of Medical Intervention**: None

**Evidence Collected at Autopsy**:

1. Liver and kidneys for toxicology.
2. One tube of blood for toxicology, from the heart.
3. Tissues from the major organs.

**Tattoos**: Two tattoos are seen. One is a none understood design with the word "Crazy" at the top. This is at the left lateral arm. The other is the name "Lori" written over the top surface of the shaft of the penis.

**Radiographs**: None

**Incisions**:

1. Head, coronal.
2. Chest, Y-shaped.
3. Abdomen, midline.
4. Throat, midline.

**Examination and Description of Injuries**: Old bruises are present at the upper posterolateral pelvis. The larger is 2 inches and about 1 inch below it is the 1-1/2 inch bruise. They seem older, consistent with the history, but this is not clear due to the decomposition that obscures the findings. No incisions are made into them. No samples are collected. Other signs of trauma are lacking. The head is carefully examined. The brain is a gray-green pultaceous mass without signs of blood or other signs of trauma. There are no sharp force injuries or gunshot wounds to the body.

**Internal Examination for Signs of Natural Pathology**:

A. BODY CAVITIES:

1. Head: The cranium and potential spaces of the head are unremarkable.

2. Chest: Unremarkable, except for decomposition.

3. Abdomen: Unremarkable, except for moderate decomposition.

4. Pelvis: Unremarkable, except for decomposition.

RECEIVED CAL APPEALS   SEP 2 5 2006
RECEIVED CAL APPEALS   SEP 2 5 2006

CAL   A 0602524

JANOE AUTOPSY CONTINUED
PAGE 3

RECEIVED CAL APPEALS   SEP 29 2006
RECEIVED CAL APPEALS   OCT 06 2006
RECEIVED CAL APPEALS   OCT 20 2006

**B. SYSTEMS:**

1. Central Nervous: The brain is 1245 grams. It consists of a slightly formed gray-green pultaceous mass with some preservation of the surface architecture. It is scooped out of the skull. There are no collections of blood nor are there any signs of pathology that might be seen beyond the obscuration of the decompositional process.

2. Cardiovascular: The heart is 345 grams. It appears enlarged. The estimated weight before decomposition is 445 grams. The left main coronary artery is 60% atherosclerotic with a 2 x less than 1 mm. residual space. The circumflex is 70% occluded near its origin. The left anterior descending branch is 80% occluded in many focal areas, especially proximally. The right coronary artery is unremarkable. Otherwise, the heart with its pericardial sac, epicardium, coronary arteries, myocardium, endocardium and valves is unremarkable. The aorta with its branches and the vena cava with its tributaries are unremarkable. The pulmonary arteries are unremarkable and there are no signs of thromboemboli.

3. Respiratory: The airway is clear. There are no signs of inflammation. The lungs are unremarkable, except for obvious anthracosis.

4. Gastrointestinal: The GI tract, liver, gallbladder and pancreas are all unremarkable. The GI tract is examined by visualization and palpation. No collections of blood are seen. No stones are felt in the gallbladder.

5. Lymphoid: The spleen is moderately enlarged. The estimated weight is 400 grams. The lymph nodes are not prominent.

6. Genitourinary: The kidney both appear hyperplastic. The estimated weight is about 230 grams for each kidney. The surface is smooth. There are no pitted scars. The kidneys, ureters, urinary bladder, prostate and testicles are unremarkable. The prostate and testicles are examined by palpation.

7. Endocrine: The pituitary is not seen. The thyroid and adrenal glands are unremarkable.

8. Musculoskeletal: Unremarkable

**TOXICOLOGY**: A standard coroner's panel is requested.

**Also refer to Toxicology Report**

SCREENED OUT   SEP 20 2006
SCREENED OUT
SCREENED OUT   SEP 20 2006
SCREENED OUT   OCT 06 2006

00114

RECEIVED CAL APPEALS    SEP 2 5 2006
RECEIVED CAL APPEALS    SEP 0 2006
CAL    A    0602524

JANOE AUTOPSY CONTINUED
RECEIVED CAL APPEALS    SEP 2 9 2006
PAGE 4
A-0394-06
RECEIVED CAL APPEALS    OCT 0 6 2006
RECEIVED CAL APPEALS    OCT 2 0 2006

**DIAGNOSIS:**

I. Severe atherosclerotic heart disease.
II. Signs of old trauma to the right posterolateral pelvic region, no signs of complications.
III. Drowning.
IV. History of methamphetamine use (see toxicology report) (33 mg/L blood level).
V. No history of foul play.
VI. History of social stress and strain and difficult drug problem.

**CAUSE OF DEATH**: Probable drowning, unknown.    Contributing Causes: 1) Chronic methamphetamine use.  2) Atherosclerotic heart disease.

**Manner of Death**: Natural

**How injury occurred**: Probable cardiac event due to heart disease and drug use; then drowned.

**WITNESSES PRESENT**: Detective John Munoz, Forensic Specialist Ricardo Tomboc, San Bernardino Police Department.

Autopsy Completed 1030 hours, July 28, 2006.

Eugene Carpenter, M.D.
Pathologist

Date: _8-29-6_

EC:pm

SCREENED OUT    SEP 2 0 2006
SCREENED OUT    SEP 2 5 2006
SCREENED OUT    SEP 2 9 2006
SCREENED OUT    OCT

00115

EXHIBIT

L

RECEIVED CAL APPEALS    SEP 2 5 2006
RECEIVED CAL APPEALS    SEP 2 5 2006
RECEIVED CAL APPEALS    SEP 2 9 2006
RECEIVED CAL APPEALS    OCT 0 6 2006
RECEIVED CAL APPEALS    OCT 2 0 2006

CAL    A 0602524



# County of San Diego

GLENN N. WAGNER, D.O.
CHIEF MEDICAL EXAMINER

CHRISTINA STANLEY, M.D.
CHIEF DEPUTY MEDICAL EXAMINER

### OFFICE OF THE MEDICAL EXAMINER
5555 OVERLAND AVE., Ste 1411, SAN DIEGO, CALIFORNIA 92123-1245
TEL: (858) 694-2895  FAX: (858) 495-5956

# TOXICOLOGY REPORT

| | |
|---|---|
| Name: | **JANOE, Brett Harvey** |
| SBCCO Number: | **06-05661 LD** |
| Autopsy Number: | **A0394-06 EC** |
| Date of Death: | **07/21/2006** |
| Pathologist: | **Eugene Carpenter, M.D.** |
| Specimens Received: | **Heart Blood, Kidney, Liver** |

| Test Name (Method of Analysis) | Specimen Tested | Result |
|---|---|---|
| **Alcohol Analysis (GC)** | Heart Blood | |
| **Alcohol (Ethanol)** | | **0.06 % (w/v)** |
| Acetone, Methanol, Isopropanol | | Not Detected |
| **Drugs of Abuse Screen (ELISA)** | Heart Blood | |
| Cocaine metabolites | | Not Detected |
| Opiates | | Not Detected |
| **Amphetamines** | | **Presumptive Positive** |
| Benzodiazepines | | Not Detected |
| Fentanyl | | Not Detected |
| Cannabinoids | | Not Detected |
| **Amphetamines (GC/MS)** | Heart Blood | |
| **Methamphetamine** | | **0.33 mg/L** |
| Amphetamine | | Not Detected |
| Ephedrine | | Not Detected |
| Pseudoephedrine | | Not Detected |

End Results

**Comment:**

EC 8-29-6

**These results would be consistent with the use of alcohol and methamphetamine.**

| | | | |
|---|---|---|---|
| Approved and Signed: | *Catherine E. Hamm* | Reviewed: | *J. L. Sherrard* |
| 08/18/2006 | Catherine E. Hamm | | James Sherrard |
| | Toxicologist III | | Toxicologist II |

SCREENED OUT    SEP 2 0 2006    SCREENED OUT    SEP 2 9 2006
SCREENED OUT    SEP 2 5 2006    SCREENED OUT    OC

00117

# EXHIBIT

M

CALIPATRIA STATE PRISON

INVESTIGATIVE SERVICES UNIT

CASE REFERRAL TO

IMPERIAL COUNTY DISTRICT ATTORNEY

DATE:            10-02-06           INCIDENT REPORT NUMBER        CAL-CEN-06-07-0244

REPORT RECEIVED:    08-03-06        INCIDENT REPORT TITLE         THEFT IN EXCESS OF $500.00

REPORT DATED:      07-20-06         INMATE NAME & CDC NUMBER:     JANOE  J25333

The above case was evaluated for referral to the Imperial County District Attorney and the following decision was made:

_____ Report returned to involved staff for more data:

_____ Investigation being conducted by Security and Investigations:

___X____ No referral to the District Attorney will be made since:

           _____ There was no significant injury.

           _____ Potential for injury existed, but victim will not testify

           _____ Prima facie evidence exists, but there is insufficient data for other than administrative action.

           _____ Insufficient quantity of drugs for prosecution.

           _____ Problems exist with the chain of evidence.

           _____ Inmate has a long sentence and the most appropriate resolution will be effected via administrative
                   disposition.

           _____ Not a referable offense.

           _____ Does not meet criteria of agreement with District Attorney.

          ___X___ Other   WILL BE ISSUED A CDC-115 FOR POSSESSION OF STOLEN PROPERTY AND
                   CHECK FRAUD.  TO BE FILED BY OUTSIDE AGENCY IF FILED.

           _____     /   / , this case was referred to the Imperial County District Attorney.

           _____ On     /   / , the Investigation Services Unit received written notice that the Imperial
                 County District Attorney rejected / dismissed this case.

          ___X___ Any pending disciplinary action should be completed at this time and a closure report completed and
                 Forwarded to the Associate Warden-Housing for distribution

The above is pursuant to revision of the California Code of regulations, Title 15 Section 3316, which allows for discretionary referral of criminal cases.

Any questions may addressed via the Captain, Security and Investigations Unit at extension 5340.

G. Stratton, Lieutenant
Chief Investigator
Investigative Services Unit

Original: Incident Package

cc:    AW A/B or C/D
      Records
      AW Custody
      Inmate
      Facility Lieutenant



RECEIVED
OCT 10 2006
By_____

00119

# EXHIBIT

N

RECEIVED CAL APPEALS SEP 2 5 2005
INMATE/PAROLEE
APPEAL FORM FEDERAL APPEALS SEP 29 2006
CDC 602 (12/87)
RECEIVED CAL APPEALS OCT 0 6 2005

**INMATE/PAROLEE APPEAL FORM**

| Location: Institution/Parole Region | Log No. | | Category |
|---|---|---|---|
| 1. ___ | **CAL** | A 0602524 | |
| 2. ___ | 2. ___ | | |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| Bobby B. JANOE Janoe | J25333 | N/A | A-5-239 |

A. Describe Problem: I am appealing the finding of my guilt on serious rule violation 115 for fraud, by LT. sigler. I still have not received the decision by LT. sigler on that 115 hearing. see exhibit A, I have since been able to obtain my copy of the 115 from my property, (4 3 Pages). see exhibit B, Apparently from april 2006 to july 2006 my brother bret Janoe was mailing stolen money orders and/or checks for deposit to my trust account, without my Knowledge. At the 115 hearing I submitted a declaration from myself, my brother brian Janoe; and my mother Marilyn Janoe, to explain what occured as best as we Knew, see exhibit C, After the

Cont. p.2

If you need more space, attach one additional sheet.

B. Action Requested: Reverse the finding of guilt on the serious rule violation 115 for fraud, Remove all references of serious rule violation (115) Log # 07-06-A-005 from my file.

Inmate/Parolee Signature: _Bobby S. Janoe_    Date Submitted: 9/21/06

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

Staff Signature: _____    Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

Signature: _____    Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

CSP CAL BYPASS

RECEIVED INMATE APPEALS BRANCH DEC 18 2006

SCREENED OUT SEP 2 5 2006
SCREENED OUT SEP 29 2006
SCREENED OUT OCT 06 2005

PS CAL    A 0602524

00121

RECEIVED CAL APPEALS    SEP 2 5 2006
RECEIVED CAL APPEALS    SEP 2 9 2006

CAL    A 0602524

his hearing I found out bret Jande was found dead in san
RECEIVED CAL APPEALS    OCT 2 0 2005
bernardino. See exhibit D. I believe bret was suffering from
RECEIVED CAL APPEALS    OCT 2 0 2005.
dementia and coupled with the methamphetamine he was using and
also alcohol that his cognitive skills at best were rudimentary.
I had no knowledge bret was sending stolen money orders and/or
checks for deposit to my trust account. I never saw any of the
money orders and/or checks as they arrived at the trust account office
for deposit on to my trust account. Yes I did receive the envelopes
from bret, but there were no letters with them, except the one
letter squad office confiscated as it arrived at the institution prior
to be delivered to me. How Could I have knowledge that the
money orders and/or checks arriving at the institution were in fact
stolen? under california law, the indispensable elements of a fraud
claim include a false representation; knowledge of its falsity; intent
to defraud; justifible reliance and damages. See vess v ciba-Geigy
Corp USA 317 F3d 1097 2003. Had I received the letter from bret detailing
his scam I would have notified officer rodriguez (second watch 1, building
A yard) immediately. Had I received any of the altered money orders and/
or checks in the envelopes, I would have notified officer rodriguez
immediately. I would like to state I take responsibility for the funds
the state lost. I believe it was 530.00 dollars. I will pay this
amount back to the state, but I am just as much a victim of my
brothers (bret Janoe) scam as the state was. I had not spoken to
my brother for 20 years. He is not on my visiting list, his address was
not in my address book and I did not even have a photo of him in
my property.

SCREENED OUT    SEP 2 5 2006

SCREENED OUT    OCT SEP 2 6 2005 2006

2

00122

Page 2 continuance from section H

alcohol use, rendered his cognitive skills at best as rudimentary. As a prisoner housed in California Department of Corrections and rehabilitation, I have no control what so ever, over what someone mails into the institution in my name.

Now when you look at all the staff reports (see exhibit b) they document how they discovered stolen money orders and/or checks were being mailed to the institution in my name. On 8/4/06 LT. Gigler held a hearing on this serious rule violation and at p.6 of 12 found me guilty, based on the before mentioned reports by officers. What you will notice missing is any tangable evidence substantiating I knew that bret Janoe was mailing stolen money orders and/or checks to the institution in my name. Additionally when you review the copies of the checks the staff provided to me (see exhibit B) you will notice everyone is altered and was so when they arrived at the trust account office; consequently, trust account officials here at the institution should never have processed those obviously altered money orders and/or checks. At the 2nd level response at p.3 trust account officials were questioned by CC II Mr. Bell, as to how obviously altered money orders and/or checks were in fact processed onto my trust account? The trust account official stated "we should have visually caught it in the beginning, due to you could tell inmate Janoe's name was obviously typed over the original name printed on the check". It should be noted, when trust account officials would post these stolen money orders and/or checks onto my account, they immediately would withdraw 70% and forward to the state and federal courts, as I owed for filing fees in these courts and this accounted for approximately 364.00 dollars. I spent 75.00 dollar at canteen and sent 99.00 dollars to my mother, for a total of approximately 530.00 dollars.

To sustain a conviction for "possession of stolen property" three prongs must be established, 1) the property must be stolen; 2) defendant must know

00123

Page 3

the property is stolen; and 3) defendant must have had possession of the stolen property. See People v Myles 50 Cal app3d 423 (1975). In this instance, there is no evidence that I knew the money orders and/or checks that were arriving at the institution trust account office were stolen; nor did I ever have possession of the money orders and/or checks in question.

To sustain a conviction for check fraud, the defendant must present the check as genuine; knowing it is not; with the intent to defraud. People v Jackson 92 Cal app3d 556 (1979). An intent to defraud is an intent to deceive another person for the purpose of gaining a material advantage over the other person. People v Booth 48 Cal app 4th 1247 (1996). In this instance, there is no evidence that I tried to present these stolen money orders and/or checks to the trust account office for deposit onto my trust account. They all went directly from Bret Janoe via the U.S. mail to the trust account office.

There is no "preponderance of evidence" that I knew the stolen money orders and/or checks being mailed to the institution by Bret Janoe were in fact stolen. I never even saw any of them. I did not present them to the trust account office for deposit onto my account either. Lt. Sigler is basing his decision of my guilt on the fact the stolen money orders and/or checks were mailed to the institution in my name and since I am housed at Calipatria state prison, as a convicted felon, I am presumed guilty of every subsequent allegation. It should also be noted, I take full responsibility for the funds the state lost. It should also be noted, the Calipatria state prison investigative services unit declined to even refer this matter to the district attorney. (see attached case referral sheet). As such, the guilt finding should be reversed and all references of the 115 should be removed from my file.

State of California                                              Department of Corrections and Rehabilitation

# Memorandum

Date:    DEC - 6 2006

To:      Janoe, J-25333
         Calipatria State Prison

Subject: SECOND LEVEL APPEAL RESPONSE
         LOG NO.:CAL-A-06-02524

ISSUE:

The appellant is submitting this appeal relative to CDC Form 115, Rules Violation
Report (RVR), Log #07-06-A-005, dated July 05, 2006, for Possession of Stolen
Property and Check Fraud.    It is the appellant's position that on
Friday, August 04, 2006, Senior Hearing Officer (SHO) J. Sigler, inappropriately
violated your due process rights by finding you guilty of the aforementioned RVR.
You allege you had no knowledge that your brother Bret Janoe was depositing
stolen money orders and checks into your inmate trust account at Calipatria
State Prison (CAL).   You state you never had possession or seen the money
orders that were sent to you, due to they were deposited into your inmate trust
account by accounting staff personnel.    You state Bret was arrested on
May 31, 2006, by the San Bernardino Sheriffs Department, Twin Peaks, for
burglary of a United States Post Office.    You state there was insufficient
evidence presented at your hearing, that you had knowledge that the money
orders deposited into your trust account were stolen.

You are requesting on appeal that the findings of your guilt in the matter be
rescinded.

INTERVIEWED BY:  D. Bell, Correctional Counselor II, on November 28, 2006.

REGULATIONS:  The rules governing this issue are:

   California Penal Code Section 12022.7.  Infliction of Great Bodily Injury

   California Code of Regulations, Title 15, Section (CCR) 3005.  Conduct.

   CCR 3084.5.  Levels of Appeal Review and Disposition.

   CCR 3313.  Classification of Rules Violation Report and Notice of Pending
   Charges.

   CCR 3320.  Hearing Procedures and Time Limitations.

On July 12, 2006, you were served a pre-hearing copy of RVR,
Log #07-06-A-005, dated July 05, 2006, for the specific act of Possession of
Stolen Property and Check Fraud, and served a copy of CDC-115 Supplement

00125

JANOE, J-25333
CAL-A-06-02524
PAGE 2

authored by Correctional Officer (CO) V. Canada.  On August 03, 2006, you were served a copy of Incident Report # CAL-CEN-06-07-0224.

On July 17, 2006, you were served Xerox copies of your inmate trust account statements from May 01, 2005 to June 2005.  You were also served a copy of the CDC 193 Trust Account Withdrawal Order to Marilyn Janoe dated May 25, 2006, one (1) inmate letter, six (6) Xerox copies of inmate correspondence envelopes to you, from your brother Brett Janoe, Box 651 Running Springs CA. 92382, two (2) Xerox copies of checks paid to the order of Bobby Janoe, J25333, and two (2) copies of money orders paid to the order of Bobby Janoe.

On August 04, 2006, at approximately 1505 hours, you appeared before an experienced SHO, J. Sigler, for the adjudication of the RVR.  You plead not guilty, and elected to make the following statement:  "I have not seen my brother in over twenty years.  The last time I saw him he stole property from me and my mom, and then he disappeared.  I am surmising that he took it and sold it for money, now this is twenty years later etc."

The SHO considered your statement at the time of the hearing.  The SHO noted that he reviewed the three (3) typed declarations that you presented at your hearing from you, your mother and brother Brian Scott.

You were found guilty of Possession of a Stolen Property and Check Fraud, a Division "B" offense and assessed 150 days forfeiture of credit, and 90 days loss of phone, ten (10) days loss of yard, and 90 days temporary placement in privilege group "C" in accordance with CCR, Title 15, Section 3044(f)(1)(B), starting on August 04, 2006, and ending on November 03, 2006, consistent with a Division "B" offense.

You were found guilty based upon the preponderance of evidence submitted at the hearing, which was considered valid and substantiated the charge.  The evidence included:    Information contained in Incident Package Log #CAL-CEN-06-07-0244, CDC-837 authored by CO, S. Crittendon, dated July 11, 2006, CDC-837 Supplemental Report authored by CO, V. Canada, CDC-Supplemental Report authored by Accounting Clerk II, P. Weitzel, CDC-Supplemental Report authored by G. Shepard, 2nd CDC-115 Supplemental Report authored by CO, V. Canada, and 17 photocopies of evidence collected and/or recovered from your cell.

1.    The Reporting Employee's written report which states, "On Wednesday, July 05, 2006, Security and Investigations concluded its investigations into numerous altered checks received at Calipatria State Prison for Inmate Janoe, J-25333, A1-150." 2.  Four (4) out of Five (5) of the checks noted on CDC-115-C page #11 was deposited into your inmate trust account were confirmed stolen by the Security and Investigations Unit.

On August 15, 2006, the SHO's finding and disposition were reviewed and affirmed by a Chief Disciplinary Officer.  On August 24, 2006, you were issued the final copy of the adjudicated RVR.

The Second Level of Review (SLR) notes although you were not in a position to view the incoming checks, you received monthly statements from the Calipatria State Prison's Accounting Department.  These statements indicated deposits

JANOE, J-25333
CAL-A-06-02524
PAGE 3

had been made to your account, which would have given you knowledge of your account activity and current funds available.

It is also noted a cash withdrawal in the amount of $530.30 was withdrawn from your account prior to the CAL Accounting Office discovery of the altered checks. A review of your trust account statement and activity prior to the $2,021.51 dollar deposits on April 27, 2006, clearly indicated your previous account balance was zero.

It is noted on December 05, 2006, Correctional Counselor II, Inmate Appeals Coordinator, D. Bell, interviewed CAL Inmate Trust Account Office Technician, W. Neciuk, as to why were the checks and money orders processed and deposited into your trust account when it appeared that the checks were altered and fraudulent. Mr. Neciuk stated, "We should have visually caught it in the beginning, due to you could tell inmate Janoe's name was obviously typed over the original name printed on the check. However, we eventually caught on, flagged his incoming checks and sent copies to the Security and Investigations Unit. Prior to these checks being placed into inmate Janoe's account, he had no prior activity what so ever. He never had spent any money on canteen. However, after the checks were deposited into his accounts he spent money on canteen, and he even sent money to his mom."

The SLR notes Detective Pelkey of the San Bernardino Sheriff's Department, Twin Peaks, confirmed that your brother Bret Harvey Janoe and two (2) other suspects were arrested on May 30, 2006, for burglary of a United States Post Office.

After reviewing the processing of your RVR, it was determined that time constraints were met, procedures were followed, and due process was afforded to you. You provided no new or compelling evidence to the RVR. Therefore, I find no reason to alter the original decision.

DECISION: The appeal is denied.

The appellant is advised that this issue may be submitted for a Director's Level of Review if desired.

T. OCHOA
Chief Deputy Warden (A)
Calipatria State Prison

00127

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA  94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date:  **MAR 1 4 2007**

In re:  Janoe, J-25333
Calipatria State Prison
P.O. Box 5002
Calipatria, CA  92233

IAB Case No.: 0607129          Local Log No.: CAL 06-02524

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner R. Floto.  All submitted documentation and supporting arguments of the parties have been considered.

**I    APPELLANT'S ARGUMENT:** The appellant is submitting this appeal relative to CDC Form 115, Rules Violation Report (RVR), Log #07-06-A-005, dated July 5, 2006, for "Possession of Stolen Property and Check Fraud," a Division "B" offense.  He claims that his due process rights were violated by finding him guilty of the offense.  It is the appellant's position that he is not guilty of the RVR as charged.  He requests dismissal of the RVR.

**II    SECOND LEVEL'S ARGUMENT:** The reviewer found that the appellant was afforded all of his due process rights, including a fair and unbiased hearing.  On July 5, 2006, the Security and Investigations Unit concluded an investigation regarding altered checks received by the appellant.  He had received checks for $5,727.19 and $5,190.87, which had been determined to be altered.  Investigation revealed that the appellant had received ten additional altered checks from his brother from April 27, through May 30, 2006, totaling $3,771.71.  The appellant had utilized some of the funds and was provided copies of his trust account balances that reflected deposit and withdrawal activities.  The appellant was found guilty based upon a preponderance of evidence by an impartial Senior Hearing Officer (SHO).  The appellant was assigned an Investigative Employee (IE) to assist him in the gathering of evidence.  The SHO utilized the IE report during the hearing to render a decision.  The appellant was assigned an Investigative Employee (IE) to assist him in the gathering of evidence.  The SHO utilized the IE report during the hearing to render a decision.  The appellant did not meet the criteria for the assignment of a Staff Assistant as there was no need for a confidential relationship; the issues are not complex; and the appellant is not illiterate and understands English.  The appellant waived that witnesses be present at the hearing.

**III    DIRECTOR'S LEVEL DECISION:** Appeal is denied.

**A.    FINDINGS:** The appellant was afforded all due process rights in the adjudication of the RVR and all procedural guidelines were met.  A preponderance of evidence was established by an impartial SHO to sustain the guilty finding.  Reports reflect that the appellant has presented no new or compelling evidence in the appeal, which would warrant a modification of the decision reached by the institution.

**B.    BASIS FOR THE DECISION:**
California Code of Regulations, Title 15, Section: 3012, 3315, 3320, 3323

**C.    ORDER:** No changes or modifications are required by the institution.

00128

JANOE, J-25333
CASE NO. 0607129
PAGE 2

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:    Warden, CAL
       Appeals Coordinator, CAL

# LODGMENT 8

# FILED

JUN 2 2 2007

SUPERIOR COURT CA.
IMPERIAL COUNTY
JOSE O. GUILLEN CLERK
BY _____ DEPUTY

1

2

3

4

5

6

7

8               SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                        COUNTY OF IMPERIAL

10

11   In re:                              Case No. EHC-00868

12   BOBBY JANOE

13   On Habeas Corpus.                   **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

14

15

16          Petitioner, an inmate currently incarcerated at Calipatria State prison, filed the instant

17   proceeding on May 14, 2007. Petitioner alleges that he was denied due process of law in an

18   administrative hearing in which he was found guilty of possession of stolen property and check

19   fraud. He was found to have received altered or stolen checks at the prison from his brother,

20   who apparently had been arrested for burglary of a post office. Petitioner has exhausted his

21   administrative remedies.

22          The disciplinary hearing was held on August 4, 2006. Petitioner testified at the hearing,

23   and submitted declarations from his brother and mother as well as his own declaration. All

24   declarations were to the effect that petitioner had no knowledge the checks were stolen or

25   altered. Petitioner himself had not seen the checks, which had been deposited by prison staff.

1

00130

1   The evidence at the hearing indicated that petitioner was aware of the checks to the

2   extent that they were deposited into his trust account in the amount of $3771.71. Petitioner

3   himself had withdrawn some $1100 from his trust account. Six empty envelopes indicating

4   correspondence between petitioner and his brother were found in his cell when it was searched.

5       The Court finds that petitioner was afforded due process of law. Further, the court's

6   review of the evidence is limited to the question of whether the decision is supported by "some"

7   evidence. *In re Powell* (1988) 45 Cal 3rd 894.

8       Inasmuch is the decision of the hearing officer was supported by some evidence, the

9   petition is denied.

10  DATED: June 20, 2007

11

12  JEFFREY B. JONES
    Judge of the Superior Court

13

14

15

16

17

18

19

20

21

22

23

24

25

2

# LODGMENT 9

AURORA

REC'D CLS DOCKETING

Name BOBBY S. JANDE

Address PO Box 5004

Calipatria California 92233

CDC or ID Number J25333

COPY

MC-275

Court of Appeal Fourth District

**FILED**

AUG -3 2007

Stephen M. Kelly, Clerk

**DEPUTY**

## COURT OF APPEAL
## FOURTH DISTRICT DIVISION ONE
(Court)

BOBBY S. JANDE
Petitioner

vs.

California dept. of Corrections and Rehabilitation
Respondent

PETITION FOR WRIT OF HABEAS CORPUS

No. **D 051373**

(To be supplied by the Clerk of the Court)

## INSTRUCTIONS—READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

Read the entire form *before* answering any questions.

This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

Notify the Clerk of the Court in writing if you change your address after filing your petition.

In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rule 60 of the California Rules of Court [as amended effective January 1, 2005]. Subsequent amendments to Rule 60 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev. July 1, 2005]

PETITION FOR WRIT OF HABEAS CORPUS

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rule 60(a)

American LegalNet, Inc.
www.USCourtForms.com

00132

This petition concerns:

- [x] A conviction
- [ ] A sentence
- [ ] Jail or prison conditions
- [ ] Other (specify): _____
- [ ] Parole
- [ ] Credits
- [x] Prison discipline

1. Your name: BOBBY S. JANOE

2. Where are you incarcerated? California state prison

3. Why are you in custody? [x] Criminal Conviction    [ ] Civil Commitment

   *Answer subdivisions a. through i. to the best of your ability.*

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

      Murder

   b. Penal or other code sections: 187 (a)

   c. Name and location of sentencing or committing court: Superior court of California, county of orange

   d. Case number: N/A

   e. Date convicted or committed: January 14, 1994

   f. Date sentenced: N/A

   g. Length of sentence: N/A

   h. When do you expect to be released? N/A

   i. Were you represented by counsel in the trial court? [x] Yes. [ ] No. If yes, state the attorney's name and address:
      Douglas oTo 111 ocean blvd long beach California

4. What was the LAST plea you entered? *(check one)*

   [x] Not guilty    [ ] Guilty    [ ] Nolo Contendere    [ ] Other:

5. If you pleaded not guilty, what kind of trial did you have?

   [x] Jury    [ ] Judge without a jury    [ ] Submitted on transcript    [ ] Awaiting trial

6.  GROUNDS FOR RELIEF
Ground 1: State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

Senior hearing officer Lieutenant J. Sigler violated my due process rights, by finding me guilty of a Serious Rule violation for possession of stolen property and check fraud, despite the complete devoid of evidence to substantiate the finding of guilt.

a.  Supporting facts:
Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

I am filing this petition to challenge the finding of my guilt in a serious Rule violation 115 and the sanction of a lose of good time day credit of 150 days. In the interest of brevity, I had not spoken to my brother bret Janoe in over 20 years; nor was bret Janoe one of my approved visitors; nor had I used the telephone to speak to bret Janoe. Apparently starting at the end of april 2006 until June 2006 bret was mailing stolen money orders and/or checks in my Name to Calipatria state prison, see exhibit A,B,C. On July 12, 2006 I was issued a serious Rule violation, see exhibit D, for the possession of stolen property and check fraud. The court will note @ p.2 of exhibit D, the sixth paragraph, officer crittendon admits, I was not in a position to view the fraudulent money order and/or checks as they arrived at the institution trust account office, who would process these fraudulent money orders and/or checks on to my account and forward the empty
Cont.p.4

b.  Supporting cases, rules, or other authority (optional):
(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)

The question I present to the court, is there any evidence in the CDCR record they based my guilt on, that I Knew the money orders and/or checks bret Janoe was mailing to the institution in my Name, were stolen?

Cont. p. 7

PETITION FOR WRIT OF HABEAS CORPUS

envelope to me. Once I started to receive these empty envelopes from bret, I did write him at the return address on the envelope, see exhibit A, @ p. 1-2.

Approximately june 10, 2006 officers Crittendon; Canada; and sergeant Rutledge searched my assigned cell and confiscated six envelopes the trust account office had processed and forwarded to me, from bret, see exhibit D, @ p. 3. Approximately 16 or 17 physically altered money orders and/or checks, were processed onto my trust account, as funds available for me to spend, see exhibit D, @ p. 4.

Officer Canada states on june 13, 2006 he received two envelopes from the trust account office technician W. Neciuk, with two checks in one envelope "medicare payment" and one check from east valley water district in the other envelope with a two page letter to me from bret. officer canada states he put both envelopes; three checks; and the two page letter in the evidence locker #10 at central control. So the only letter bret wrote me, was confiscated as it arrived at the institution by officer canada. Apparently in july 2006 another envelope arrives with two physically altered money orders inside and they were not processed onto my trust account, but were confiscated, see exhibit D, @ p. 5; @ p. 7.

The crime/incident report, see exhibit E @ p. 2 second paragraph, explains the california dept. of corrections theory of events. Also included is the narrative from trust account worker P. Weitzeil; officer crittendon; and officer canada.

The hearing on the serious Rule violation 115, see exhibit F was held in front of Lieutenant J. Sigler. I plead not guilty and submitted three declarations, see exhibit A; B; and C to explain what occured, as to the best of my knowledge. In exhibit F, @ p. 5, I inquire, at paragraph nine, about the process of receiving mail incoming into the

4.

institution and processing of money order and/or checks, because all of the money order and/or checks bret mailed to the institution were physically altered, in that my name was just written on the front of them at the top and/or over the original name. see exhibit F. This is a copy of one of the checks processed onto my trust account and some copies of envelopes they arrived in, and were sent to me, once the funds were processed onto my account. When the court looks at the check, exhibit F, it is obviously physically altered and therefore fraudulent; consequently, I would ask the court to determine, how the fraudulent check was processed onto my account, along with 10 others, that were all physically altered? see exhibit O, @ p.4.

Now finally after 10 or 11 obviously physically altered money orders and/or checks were processed onto my trust account, account clerk II F. shepherd, see exhibit O, @ p. 8, notices two incoming checks were fraudulent, see exhibit H, along with the two page letter from bret, and reports this to the security and investigation unit of the institution. Even later two more fraudulent money orders arrive at the institution that were confiscated. see exhibit i.

Next is a copy of my trust account activity, see exhibit J. The court will notice as the fraudulent money orders were posted onto my trust account, that very person would deduct court filing fees I owed to the courts, @ 4/27; and 5/05 to forward to the different courts, which accounted for 239.59 dollars of the funds lost by the CDCR. Now getting back to the actual hearing in front of Lieutenant J. sigler see exhibit F, @ p. 6-12, the Lieutenant explains what evidence he is basing his decision on, to find me guilty, of possession of stolen property and check fraud. When the court looks at the evidence, exhibit F, @ p. 6-12, it will notice Lieutenant J. sigler is basically basing.

5.

his decision of my guilt, on the reports of the CDCR employees who discovered the fraudulent introduction of money orders and/or checks into the institution and that is all.

lets be reasonable, had I been able to view any of these physically altered money orders and/or checks prior to them being processed onto my trust account I would have alerted the staff or if I had been able to receive the two page letter bret wrote me, that was confiscated prior to be delivered to me, I would have alerted staff. I have been housed at Calipatria state prison for 13 some odd years and this is my first 115. I am not a dope fiend; nor do I drink alcohol; nor do I smoke cigarettes; consequently, why would I all of the sudden need money? My past behavior, circumstancially is an indicator of future behavior. I had no knowledge bret was sending stolen money orders and/or checks in my name to the institution. Right after the actual 115 hearing in front of Lieutenant J. Sigler, I found out bret was found dead in san bernardino county, see exhibit K, I believe bret was suffering from dementia; due to atherosclerosis and coupled with the methamphetamine and alcohol use, see exhibit L, rendered brets cognitive skills at best, as rudimentary.

I would have certainly welcomed a prosecution in the imperial court, so I would have been able to establish I did not know bret was mailing stolen money orders and/or checks to the institution in my name, so as to settle this whole matter, but I would argue the investigative services unit recognized they had no evidence to prove I knew bret was mailing stolen money orders and/or checks to the institution in my name and consequently decided to not even refer the matter to the imperial county district attorney's office, see exhibit M.

C.

# JURISDICTION

The California Constitution, article VI § 10; article I § 11 and the federal constitution, article I § 9 explicitly recognized habeas corpus petitions. Habeas corpus petitions is the appropriate remedy to seek restoration of lost good time credits. Preiser v Rodriguez 1973 411 us 475. The habeas corpus petition should first be filed in superior court. In re ramirez 2001 89 CA4th 1312, court of appeal has discretion to deny habeas writ on ground that application for writ has not been made to lower court. Also see In re Hillery 1962 202 CA2d 293, 294. The proper venue lies in the county of the petitioners confinement when conditions of confinement are challenged. In re lumbert 1980 113 CA3d 316.

# ARGUMENT
## I
## STANDARD OF REVIEW

In re Dikes 2004 18 cal rptr 3d 9, Cal. app 1. Dist, @ p. 11-12, The legislature has granted the CDCR broad authority for the discipline of prisoners in state prison (penal code § 5054) including the authorization to promulgate regulations governing discipline. see In re Scott 2003, 113 CA4th 38. A good time credit is a prospective benefit that depends on the prisoners sustained good behavior and is subject to review and withdrawal for cause by the disciplinary board. While the CDCR cannot interpret regulations arbitrarily or capriciously, it does not abuse its discretion when it has some basis in fact for its decision. (Ibid). A prison disciplinary action must be supported by "Some evidence". Superintendent v Hill 1985 472 us 445.
Due process requires procedural protections befor a prisoner can be

7.

deprived of a protected liberty interest in good time credits. Wolff v MC Donnell 1974 418 US 529. In Wolff, the court held that before being stripped of good time credits, an inmate must receive certain minimum due process protections, including written notice of the claimed violation, an opportunity to be heard and to call witnesses and a written statement detailing evidence relied on and reasons for the disciplinary action. (Id. @p. 563-567).

In Superintendent v Hill supra 472 US @p. 454, the united states supreme court held, that the requirements of due process in a prison disciplinary action are satisfied "if" some evidence supports the decision by the prison disciplinary board to revoke good time credits. In determining whether the evidentiary standard is satisfied, the relevant question is, whether there is any evidence in the record that could support the conclusion reached by the disciplinary board? (Id. @p. 455-456).

# ARGUMENT
## II

PETITIONERS DUE PROCESS RIGHTS WERE VIOLATED BY THE FINDING OF GUILT ON THE SERIOUS RULE VIOLATION AND STATED SANCTION, LOSS OF 150 GOOD TIME CREDIT DAYS

In the serious rule violation, petitioner was charged with possession of stolen property and check fraud.

To sustain a conviction for possession of stolen property, three prongs must be established, 1) the property must be stolen; 2) defendant must know the property is stolen; 3) defendant must have had possession of the stolen property. People v Myles 1975 50 CA3d 423. DOMINANCE and

9.

00139

Control are essentials of possession and they cannot be inferred by/from mere presence or access. Something more must be shown to support inferring these elements.

In this instance, there is no evidence in the CDCR Record that I knew the money orders and/or checks that were arriving at the institution trust office, via the united states mail, were stolen, as I never saw any of them prior to the trust office processing them onto my account, exhibit D, @ p.2 paragraph six, "Although inmate Janое wasn't in a position to view the incoming checks." Consequently, the 2nd and 3rd prong cannot be substantiated. To sustain a conviction for check fraud, 1) the defendant must present the check as genuine, 2) knowing it is not, 3) with the intent to defraud. People v Jackson 1979 9z CA 3z 556.

An intent to defraud is an intent to deceive another person for the purpose of gaining a material advantage over the person. People v Booth 1998 48 CA4th 1247.

In this instance, there is no evidence in the CDCR Record that I tried to present the stolen money orders and/or checks to the trust account office at the institution, as all of the fraudulent money orders and/or checks were delivered to the institutional trust office via the united states mail.

Lieutenant J. Sigler is basing his decision of my guilt in this matter on the fact that I am housed in the CDCR as a convicted felon and therefore I am presumed guilty of every subsequent allegation.

Petitioner of the writ of habeas corpus has the burden of proof, to establish a prima facie case for relief. Evidence code § 115 Burden of Proof means the obligation of a party to establish by evidence a requisite degree of belief concerning a fact in the mind of the court. A writ of habeas corpus is not the ultimate relief sought by the petitioner, but rather, it is a interim step in determining whether the petitioner is entitled to relief.

9.

If the habeas petition states a prima facie case for relief, the court must issue an order to show cause. Then the parties litigate the merits, People v Romero 1994 8C4th 728, 737; California Rules of Court, Rule 4.551 (a) (4)(A), (c)-(d).

Petitioner would argue the burden of proof required of him, is proof by, a preponderance of evidence.

Preponderance of evidence is usually defined in terms of probability of truth, or of evidence that when weighed with the opposed to it, has more convincing force and greater probability of truth. Leslie. G v Perry and associates 1996 43 CA4th 472.

Evidence Code § 140, Evidence means testimony, writing ... presented to the senses that are offered to prove the existence or nonexistence of a fact. Evidence Code § 190 Proof is the establishment by evidence of a requisite degree of belief concerning a fact in the mind of the court.

Lets look at the theory of the CDCR, exhibit E, @ p.2, second paragraph, "on july 5, 2006 CAL investigative service unit (ISU) completed an investigation into inmate Jance and an accomplice outside of prison (bret Jance) attempting to "launder" money through the institution. During the investigation it was determined that inmate Jance was working with bret Jance, who would send him stolen checks and money orders in an attempt to have the money placed on inmate Jances books (trust account). Once the money was received by CAL and placed on his books he would then send ½ of the money back and keep the remaining money. The money being sent back to bret Jance, would be sent via a state of California check and thus be clean money".

Petitioner would argue the CDCR was able to form this theory, once they received the one letter bret wrote me, but that was confiscated, exhibit H, before delivery to me by officer corada, exhibit O, @ p. 5.

Petitioner would argue, circumstantially, the two page letter from bret to

10.

00141