# EXHIBIT

RECEIVED CAL APPEALS SEP 29 2006
I/M COPIES
CAL A 0602524
RECEIVED CAL APPEALS OCT 06
RECEIVED CAL APPEALS OCT
CMS
MEDICARE PAYMENT
NHIC
FEDERAL HEALTH INSURANCE BENEFITS ACCOUNT
ADD61 00009559
J ROBERT WEST MD INC
PO BOX 2150
REDLANDS, CA 92373-0701
BOBBY JANOE # J-25333
PAY TO THE ORDER OF
CMS
MEDICARE PAYMENT
NHIC
FEDERAL HEALTH INSURANCE BENEFITS ACCOUNT
ADD61 00009558
J ROBERT WEST MD INC
PO BOX 2150
REDLANDS, CA 92373-0701
BOBBY JANOE # J-25333
PAY TO THE ORDER OF
SCREENED OUT SEP 29 2006
SCREENED OUT OCT 06 2006

RECEIVED CAL APPEALS SEP 29 2006

CAL A 0602524

5-16-06

RECEIVED CAL APPEALS OCT 06 2006

RECEIVED CAL APPEALS OCT 20 2006

Whats up bro!

was glad to hear from you, as for out here, I'm going thru it all lunch of bull shit, and I just can't focus at the moment, I do need to, I am planing on moving in 1 week, and I still need to find a new house, so I will Focus on that tomorrow, I have lots to do! Plus with my court case coming up next month, its nothing nice, any case, they plan to raise my bail to 300,000.00 so I am working on getting up my issues so I can fight my case from the streets, or any how my homeboy Burdooed 5, ... so for you, plus another letter with 5 ... the dears ok, over 10,000 do me a favor, could you take half of that and send it back to your account of that state of Calif. check, I will put that toward my bail, as soon as it clears, just put in a request to send out half of that to me ok, also to my P.O. box ok, 0517 thanks you, also send me out a kite when you do that!

And keep your head up, things will get better, I will get at money orders to you next week bro!

I'll get you out legally!

Trust, have faith, I do need to focus right now on my bail and court case, the deal was 8 years for what I've done nothing! ... be of good

love your brother,

SCREENED OUT SEP 29 2006

SCREENED OUT OCT 06 2006

RECEIVED CAL APPEALS SEP 27 2006

North Carolina Birth Index, 1800-2000 Page 1 of 1

cheer, and remember, if your approached on where money comes, you don't know of!

CAL A 0602524

There appears to be a problem with your email address.

RECEIVED CAL APPEALS OCT 06 2006

thanks

Discover Your Family Story

RECEIVED CAL APPEALS OCT 20 2006

write soon!

Special respect always

Your Bro

Bellamy

28 May 1933

Edgecombe

Jimmie?? Bellamy

B_C037_66001

20

4??

Source Information:

Ancestry.com. North Carolina Birth Index, 1800-2000 [database online]. Provo, Utah: ...

This list shows the counties and year ranges covered in this index. Delayed births are also included in ...

SCREENED OUT SEP 29 2006

SCREENED OUT OCT 06 2006

EXHIBIT

I

CAL A 0602524

Robert
Box 170781
S.B. Ca 92408

SAN BERNARDINO
CA 924 3 T
12 JUL 2006 PM

Enclosed
$ 287.67
287.00
86.67
$373.67

Bobby Jane
J 25333 - unit A-1-150

SCREENED OUT SEP 2 9 2006 SCREENED OUT OCT 0 6 2006

RECEIVED CAL APPEALS SEP 2 9 2006

RECEIVED CAL APPEALS OCT 0 6 2006

RECEIVED CAL APPEALS OCT 2 0 2006

CAL A 0602524

RECEIVED CAL APPEALS SEP 2

RECEIVED CAL APPEALS

RECEIVED CAL APPEALS OCT

CONTINENTAL EXPRESS MONEY ORDER COMPANY INC.
ISSUER
SANTA ANA, CALIFORNIA
MONEY ORDER
GOOD WORLD WIDE
ACEPTADO EN TODO EL MUNDO
57-42718592
NOT VALID OVER FIVE HUNDRED U.S. DOLLARS
NOT GOOD OVER $287.67
SN 005742718592 AGENT 6767 CHAIN 1
PAY ONLY
JUL 03 2006 TWO HUNDRED EIGHTY SEVEN DOLLARS AND 67 CENTS VOID OVER $287.67
FILL IN BEFORE LEAVING PREMISES
NOT PAYABLE OVER FIVE HUNDRED DOLLARS
Pay Through Union Bank of California 445 So. Figueroa St. Los Angeles, CA 9007
AUTHORIZED SIGNATURE
THE BACK OF THIS DOCUMENT IS PRINTED WITH A SECURITY PANEL

THE BACK OF THIS DOCUMENT CONTAINS AN ARTIFICIAL WATER MARK - HOLD AT AN ANGLE TO VIEW

WESTERN UNION MONEY ORDER

INTEGRATED PAYMENT SYSTEMS, INC. - ISSUER
Greenwood Village, Colorado

08-532968393

PAY EXACTLY EIGHTY-SIX DOLLARS AND NO CENTS

PAY EXACTLY

PAY TO THE ORDER OF

FOR/ACCT.

Western Union Money Order and Design is a service mark of Western Union Holdings, Inc. Payable at Wells Fargo Bank Grand Junction - Downtown, N.A., Grand Junction, Colorado

SCREENED OUT SEP 29 2006

SCREENED OUT OCT 06 2006

# EXHIBIT

J

REPORT ID: [illegible]

CALIFORNIA DEPARTMENT OF CORRECTIONS A 0602524
CALIFORNIA STATE PRISON
INMATE TRUST ACCOUNTING SYSTEM
INMATE TRUST ACCOUNT STATEMENT

RECEIVED CAL APPEALS SEP 29 2006

RECEIVED CAL APPEALS OCT 06 2005

ACCOUNT NUMBER : J25333 BED/CELL NUMBER: FA01000
ACCOUNT [illegible] ACCOUNT TYPE: I
PRIVILEGE GROUP: A

RECEIVED CAL APPEALS OCT 20 2006

TRUST ACCOUNT ACTIVITY

| DATE | TRAN CODE | DESCRIPTION | COMMENT | CHECK NUM | DEPOSITS | WITHDRAWALS |
|---|---|---|---|---|---|---|
| 05/01/2005 | | BEGINNING BALANCE | | | | |
| 05/04 | D554 | INMATE PAYROL | 04/05 | 5838 | 13.12 | |
| 05/11 | W213 | FEDERAL FILIN | 1421/06011 | | | 2.62 |
| 05/11 | W220 | STATE FILING | 15606/6015 | | | 2.62 |
| 06/03 | D554 | INMATE PAYROL | 05/01 | 6478 | 8.72 | |
| 06/03 | W512 | LEGAL POSTAGE | 5/12 | 6510 | | 8.40 |
| 06/06 | FC01 | DRAW-FAC 1 | A1 | 6520 | | 4.72 |
| 06/16 | W213 | FEDERAL FILIN | 1421/06804 | | | 1.74 |
| 06/16 | W220 | STATE FILING | 5606/06797 | | | 1.74 |
| 07/06 | D554 | INMATE PAYROL | 6/05 | 0063 | 10.16 | |
| 07/15 | W512 | LEGAL POSTAGE | 7/1 | 0289 | | 2.90 |
| 07/15 | W512 | LEGAL POSTAGE | 7/1 | 0289 | | 1.29 |
| 07/15 | W512 | LEGAL POSTAGE | 7/1 | 0289 | | 1.29 |
| 07/28 | W213 | FEDERAL FILIN | 1421/00547 | | | 2.03 |
| 07/28 | W220 | STATE FILING | 15606/0559 | | | 2.03 |
| 08/03 | D554 | INMATE PAYROL | 7/05 | 0625 | 8.40 | |
| 08/05 | W512 | LEGAL POSTAGE | 8/4 | 0686 | | 0.60 |
| 08/05 | W512 | LEGAL POSTAGE | 8/4 | 0686 | | 1.75 |
| 08/08 | W220 | STATE FILING | 15606/0722 | | | 1.68 |
| 08/08 | W213 | FEDERAL FILIN | 1421/0723 | | | 1.68 |
| 08/15 | W512 | LEGAL POSTAGE | 07/19 | 0873 | | 1.05 |
| 08/15 | W512 | LEGAL POSTAGE | 07/19 | 0873 | | 1.05 |
| 08/15 | W512 | LEGAL POSTAGE | 07/19 | 0873 | | 1.06 |
| 09/07 | D554 | INMATE PAYROL | 08/05 | 1269 | 6.80 | |
| 09/09 | W220 | STATE FILING | 15606/1342 | | | 1.36 |
| 09/09 | W213 | FEDERAL FILIN | 1421/01343 | | | 1.36 |
| 09/09 | W512 | LEGAL POSTAGE | 8/9 | 1351 | | 3.95 |
| 10/18 | W516 | LEGAL COPY CH | 09/14 | 2098 | | 0.20 |
| 11/15 | W516 | LEGAL COPY CH | 10/17 | 2657 | | 0.06 |
| ACTIVITY FOR 2006 | | | | | | |
| 04/27 | D310 | CHECK DEPOSIT | MR/ | 505780 | 2,081.51 | |
| 04/27 | D310 | CHECK DEPOSIT | MR/ | 505780 | 1,298.02 | |
| 04/27 | D300 | CASH DEPOSIT | MR/ | 505771 | 152.30 | |
| 04/27 | D300 | CASH DEPOSIT | MR/ | 505771 | 222.20 | |
| 04/27 | W213 | FEDERAL FILIN | 1421/05795 | | | 74.90 |
| 04/27 | W220 | STATE FILING | 15606/5796 | | | 74.90 |
| 04/28 | W512 | LEGAL POSTAGE | 4/29 | 5819 | | 0.63 |
| 04/28 | W512 | LEGAL POSTAGE | 4/26 | 5819 | | 0.63 |
| 05/01 | W513 | MISC. CHARGES | ENVELF5830 | | | 0.36 |
| 05/01 | W516 | LEGAL COPY CH | 04/24 | 5832 | | 1.20 |
| 05/05 | D310 | CHECK DEPOSIT | MR/ | 505938 | 295.74 | |
| 05/05 | D310 | CHECK DEPOSIT | MR/ | 505938 | [illegible] | |
| 05/05 | D300 | CASH DEPOSIT | MR/ | 505937 | 100.00 | |

SCREENED OUT OCT 06 2006

SCREENED OUT SEP 29 2006

REPORT ID: TS3030 REPORT DATE: 06/27/06

CAL A 0602524

RECEIVED CAL APPEALS SEP 29 2006

CALIPATRIA STATE PRISON
INMATE TRUST ACCOUNT STATEMENT

RECEIVED CAL APPEALS OCT 06 2006

FOR THE PERIOD: JUN. 01, 2005 THRU JUN. 27, 2006

ACCT: J25333 ACCT NAME: JANCE, BOBBY SHAWN ACCT TYPE: I

RECEIVED CAL APPEALS OCT 20 2006

| DATE | TRAN CODE | DESCRIPTION | COMMENT | CHECK NUM | DEPOSITS | WITHDRAWALS | BALANCE |
|---|---|---|---|---|---|---|---|
| 05/05 | W220 | STATE FILING | 15606/5943 | | | 69.79 | 4,583.35 |
| 05/08 | FC01 | DRAW-FAC 1 | A1 5964 | | | 76.00 | 4,507.35 |
| 05/15 | FR01 | CANTEEN RETUR | 506113 | | | 76.00- | 4,583.35 |
| 05/16 | W415 | CASH WITHDRAW | AID 6161 | 111079976 | | 99.00 | 4,484.35 |
| 05/19 | W516 | LEGAL COPY CH | 4/8 6255 | | | 0.20 | 4,484.15 |
| 05/19 | W516 | LEGAL COPY CH | 4/8 6255 | | | 5.50 | 4,478.65 |
| 05/19 | W516 | LEGAL COPY CH | 4/12 6255 | | | 0.10 | 4,478.55 |
| 05/19 | W513 | MISC. CHARGES | ENVEL 6256 | | | 0.45 | 4,478.10 |
| 05/19 | W513 | MISC. CHARGES | ENVEL 6261 | | | 1.80 | 4,476.30 |
| 05/19 | W513 | MISC. CHARGES | ENVEL 6261 | | | 45.50 | 4,430.80 |
| 05/23 | W512 | LEGAL POSTAGE | 04/19 6320 | | | 0.87 | 4,429.93 |
| 05/23 | W516 | LEGAL COPY CH | 05/19 6316 | | | 0.30 | 4,429.63 |
| 05/23 | W513 | MISC. CHARGES | ENVELP6330 | | | 0.45 | 4,429.18 |
| 05/23 | W513 | MISC. CHARGES | ENVELP6330 | | | 0.15 | 4,429.03 |
| 05/24 | W512 | LEGAL POSTAGE | 4/21 6356 | | | 4.05 | 4,424.98 |
| 05/24 | W512 | LEGAL POSTAGE | 4/21 6356 | | | 4.05 | 4,420.93 |
| 06/05 | FC01 | DRAW-FAC 1 | A1 6540 | | | 75.00 | 4,345.93 |

CURRENT HOLDS IN EFFECT

| DATE PLACED | HOLD CODE | DESCRIPTION | COMMENT | HOLD AMOUNT |
|---|---|---|---|---|
| 06/14/2006 | H118 | LEGAL COPIES HOLD | 06/13 6807 | 0.90 |

TRUST ACCOUNT SUMMARY

| BEGINNING BALANCE | TOTAL DEPOSITS | TOTAL WITHDRAWALS | CURRENT BALANCE | HOLDS BALANCE | TRANSACTIONS TO BE POSTED |
|---|---|---|---|---|---|
| 7.88 | 4,909.53 | 571.48 | 4,345.93 | 0.90 | 0.00 |

| CURRENT AVAILABLE BALANCE |
|---|
| 4,345.03 |

SCREENED OUT SEP 29 2006 SCREENED OUT OCT 06 2006

# EXHIBIT

K

RECEIVED CAL APPEALS SEP 2 5 2006
RECEIVED CAL APPEALS SEP 2 0 2006

CAL A 0602524

Division of Medical Examiner
175 South Lena Road
San Bernardino, CA 92415-0037
(909) 387-2561
Fax (909) 387-2989

RECEIVED CAL APPEALS SEP 2 9 2006

Frank Sheridan, M.D.
Chief Medical Examiner

Eugene Carpenter, M.D., Deputy M.E.

RECEIVED CAL APPEALS OCT 0 6 2006

San Bernardino County Sheriff's Department
Coroner Division

RECEIVED CAL APPEALS OCT 2 0 2006

# Autopsy Protocol

**Coroner's Case Number:** 06-5661LD **Autopsy Number:** A-0394-06

**Name:** Brett Harvey Janoe **Age:** 44 **Sex:** Male
**Time of Death:** Reported Found 0739 hours, July 21, 2006 **Race:** Caucasian
**Time of Autopsy:** 0900 hours, July 28, 2006
**Place of Autopsy:** San Bernardino County Coroner's Facility **Deputy:** De Nardo

**HISTORY OF DEATH**: This is the case of a 44-year-old Caucasian male found floating in about 2 feet of water in a flood basin area. There is a past history of social distress, methamphetamine use, and possibly of diabetes. There is no history of foul play or trauma. There are no signs of trauma. Other past medical history is not given. Drug use and social stress have been the problems. No history of suicide ideation or previous suicide attempts has been given.

There is a history of pelvic fracture from a fall in the fairly recent past.

Also refer to Coroner's Investigative Report 06-5661LD.

**External Examination for Identification and for Signs of Natural Pathology**:

This is the body of a 44-year-old, well-developed, well-nourished Caucasian male, about 73 inches in length and weighing 169 pounds. It has been refrigerated and is not embalmed. The body is identified by tags.

The major identifying characteristics consist of a long body, brown, medium length, straight hair, brown eyes (might be obscured by decomposition changes), handlebar moustache, unshaven face for about a week, no teeth, upper dental plate, uncircumcised penis, well-developed and not obese body; no signs of amputations, deformities, or needle track scars are seen. There are two tattoos discovered. The body is moderately decomposed and this obscures surface findings. The following is what can be discerned through the discoloration and the skin slippage.

The skin, head, head hair, eyes, ears, nose, mouth, throat, neck, chest, abdomen, pelvis with external genitalia and anus, back and extremities are all unremarkable for signs of natural pathology as best as can be seen through the obscuring signs of decomposition.

**Clothing**: There is clothing on the body. It consists of a tee shirt, boxer shorts, blue jeans with wide brown belt, white socks, and white running shoes. All of the clothing is soaked and muddy. Abundant numbers of papers are found, some of which have been placed in a plastic envelope apparently by the decedent. All of these are retrieved and are cleaned and spread out on a table for drying. No other articles are found within the pockets of the pants. There does not seem to be the presence of a suicide note, but the papers are not examined in detail at this time.

SCREENED OUT SEP 2 0 2006 SCREENED OUT SEP 2 5 2006 SCREENED OUT SEP 2 9 2006 SCREENED OUT OCT 0 6 2006

RECEIVED CAL APPEALS SEP 2 0 2006 RECEIVED CAL APPEALS OCT 2 0 2006

JANOE AUTOPSY CONTINUED
PAGE 2
A-0394-06

RECEIVED CAL APPEALS SEP 2 5 2006
RECEIVED CAL APPEALS SEP 2 9 2006
CAL A 0602524

**Evidence of Postmortem Changes:**

1. Moderate decomposition is present with universal green-brown discoloration and skin slippage. There is moderate bloating of the abdomen and scrotum. The eyes are soft. About 7 to 8 mL of fresh appearing red blood is found within the heart. The gallbladder and urinary bladder are dry. There are about 20 mL of a wine-like decomposition fluid found within the left pleural space. The right pleural space is dry. The peritoneum is dry. There is no oil. Maggots and fly eggs are not seen. Animal activity is not seen.
2. Rigor mortis: the arms are loose. There is moderate rigor mortis in the lower extremities.
3. Lividity: lividity cannot be assessed.

**Evidence of Medical Intervention**: None

**Evidence Collected at Autopsy:**

1. Liver and kidneys for toxicology.
2. One tube of blood for toxicology, from the heart.
3. Tissues from the major organs.

**Tattoos**: Two tattoos are seen. One is a none understood design with the word "Crazy" at the top. This is at the left lateral arm. The other is the name "Lori" written over the top surface of the shaft of the penis.

**Radiographs**: None

**Incisions:**

1. Head, coronal.
2. Chest, Y-shaped.
3. Abdomen, midline.
4. Throat, midline.

**Examination and Description of Injuries**: Old bruises are present at the upper posterolateral pelvis. The larger is 2 inches and about 1 inch below it is the 1-1/2 inch bruise. They seem older. consistent with the history, but this is not clear due to the decomposition that obscures the findings. No incisions are made into them. No samples are collected. Other signs of trauma are lacking. The head is carefully examined. The brain is a gray-green pultaceous mass without signs of blood or other signs of trauma. There are no sharp force injuries or gunshot wounds to the body.

**Internal Examination for Signs of Natural Pathology:**

A. BODY CAVITIES:

1. Head: The cranium and potential spaces of the head are unremarkable.
2. Chest: Unremarkable, except for decomposition.
3. Abdomen: Unremarkable, except for moderate decomposition.
4. Pelvis: Unremarkable, except for decomposition.

SCREENED OUT SEP 2 0 2006 SCREENED OUT SEP 2 5 2006 SCREENED OUT SEP 2 9 2006 SCREENED OUT OCT 0 6 2006

RECEIVED CAL APPEALS SEP 2 0 2006
RECEIVED CAL APPEALS SEP 2 5 2006

CAL A 0602524

RECEIVED CAL APPEALS SEP 2 9 2006
RECEIVED CAL APPEALS OCT 0 6 2006
RECEIVED CAL APPEALS OCT 2 0 2006

B. SYSTEMS:

1. Central Nervous: The brain is 1245 grams. It consists of a slightly formed gray-green pultaceous mass with some preservation of the surface architecture. It is scooped out of the skull. There are no collections of blood nor are there any signs of pathology that might be seen beyond the obscuration of the decompositional process.

2. Cardiovascular: The heart is 345 grams.. It appears enlarged. The estimated weight before decomposition is 445 grams. The left main coronary artery is 60% atherosclerotic with a 2 x less than 1 mm. residual space. The circumflex is 70% occluded near its origin. The left anterior descending branch is 80% occluded in many focal areas, especially proximally. The right coronary artery is unremarkable. Otherwise, the heart with its pericardial sac, epicardium, coronary arteries, myocardium, endocardium and valves is unremarkable. The aorta with its branches and the vena cava with its tributaries are unremarkable. The pulmonary arteries are unremarkable and there are no signs of thromboemboli.

3. Respiratory: The airway is clear. There are no signs of inflammation. The lungs are unremarkable, except for obvious anthracosis.

4. Gastrointestinal: The GI tract, liver, gallbladder and pancreas are all unremarkable. The GI tract is examined by visualization and palpation. No collections of blood are seen. No stones are felt in the gallbladder.

5. Lymphoid: The spleen is moderately enlarged. The estimated weight is 400 grams. The lymph nodes are not prominent.

6. Genitourinary: The kidney both appear hyperplastic. The estimated weight is about 230 grams for each kidney. The surface is smooth. There are no pitted scars. The kidneys, ureters, urinary bladder, prostate and testicles are unremarkable. The prostate and testicles are examined by palpation.

7. Endocrine: The pituitary is not seen. The thyroid and adrenal glands are unremarkable.

8. Musculoskeletal: Unremarkable

**TOXICOLOGY:** A standard coroner's panel is requested.

**Also refer to Toxicology Report**

SCREENED OUT SEP 2 0 2006 SCREENED OUT SEP 2 9 2006 SCREENED OUT OCT 0 6 2006
SCREENED OUT SEP 2 5 2006

RECEIVED CAL APPEALS SEP 2006
RECEIVED CAL APPEALS SEP 2 0 2006

CAL A 0602524

JANOE AUTOPSY CONTINUED
PAGE 4
A-0394-06

RECEIVED CAL APPEALS SEP 2 9 2006
RECEIVED CAL APPEALS OCT 0 6 2006
RECEIVED CAL APPEALS OCT 2 0 2006

**DIAGNOSIS**:

I. Severe atherosclerotic heart disease.
II. Signs of old trauma to the right posterolateral pelvic region, no signs of complications.
III. Drowning.
IV. History of methamphetamine use (see toxicology report) (33 mg/L blood level).
V. No history of foul play.
VI. History of social stress and strain and difficult drug problem.

**CAUSE OF DEATH**: Probable drowning, unknown. Contributing Causes: 1) Chronic methamphetamine use. 2) Atherosclerotic heart disease.

**Manner of Death**: Natural

**How injury occurred**: Probable cardiac event due to heart disease and drug use; then drowned.

**WITNESSES PRESENT**: Detective John Munoz, Forensic Specialist Ricardo Tomboc, San Bernardino Police Department.

Autopsy Completed 1030 hours, July 28, 2006.

[signature] MD
Eugene Carpenter, M.D.
Pathologist

Date: 8-29-6

EC:pm

SCREENED OUT SEP 2 0 2006
SCREENED OUT SEP 2 5 2006
SCREENED OUT SEP 2 9 2006
SCREENED OUT OCT 0 6 2006

# EXHIBIT

L

RECEIVED CAL APPEALS SEP 20 2006
RECEIVED CAL APPEALS SEP 25 2006
RECEIVED CAL APPEALS SEP 29 2006

CAL A 0602524

# County of San Diego

GLENN N. WAGNER, D.O.
CHIEF MEDICAL EXAMINER

CHRISTINA STANLEY, M.D.
CHIEF DEPUTY MEDICAL EXAMINER

RECEIVED CAL APPEALS OCT 06 2006
RECEIVED CAL APPEALS OCT 20 2006

OFFICE OF THE MEDICAL EXAMINER
5555 OVERLAND AVE., Ste 1411, SAN DIEGO, CALIFORNIA 92123-1245
TEL: (858) 694-2895 FAX: (858) 495-5956

## TOXICOLOGY REPORT

| | |
|---|---|
| Name: | **JANOE, Brett Harvey** |
| SBCCO Number: | **06-05661 LD** |
| Autopsy Number: | **A0394-06 EC** |
| Date of Death: | **07/21/2006** |
| Pathologist: | **Eugene Carpenter, M.D.** |
| Specimens Received: | **Heart Blood, Kidney, Liver** |

| Test Name (Method of Analysis) | Specimen Tested | Result |
|---|---|---|
| Alcohol Analysis (GC) | | |
| **Alcohol (Ethanol)** | Heart Blood | **0.06 % (w/v)** |
| Acetone, Methanol, Isopropanol | | Not Detected |
| Drugs of Abuse Screen (ELISA) | Heart Blood | |
| Cocaine metabolites | | Not Detected |
| Opiates | | Not Detected |
| **Amphetamines** | | **Presumptive Positive** |
| Benzodiazepines | | Not Detected |
| Fentanyl | | Not Detected |
| Cannabinoids | | Not Detected |
| Amphetamines (GC/MS) | Heart Blood | |
| **Methamphetamine** | | **0.33 mg/L** |
| Amphetamine | | Not Detected |
| Ephedrine | | Not Detected |
| Pseudoephedrine | | Not Detected |

End Results

ECJ 8-29-6

**Comment:**

**These results would be consistent with the use of alcohol and methamphetamine.**

Approved and Signed: 08/18/2006 — *[signature]* Catherine E. Hamm, Toxicologist III

Reviewed: *[signature]* James Sherrard, Toxicologist II

SCREENED OUT SEP 20 2006
SCREENED OUT SEP 25 2006
SCREENED OUT SEP 29 2006
SCREENED OUT OCT 06 2006

# EXHIBIT

M

CALIPATRIA STATE PRISON
INVESTIGATIVE SERVICES UNIT
CASE REFERRAL TO
IMPERIAL COUNTY DISTRICT ATTORNEY

| | | | |
|---|---|---|---|
| DATE: | 10-02-06 | INCIDENT REPORT NUMBER | CAL-CEN-06-07-0244 |
| REPORT RECEIVED: | 08-03-06 | INCIDENT REPORT TITLE | THEFT IN EXCESS OF $500.00 |
| REPORT DATED: | 07-20-06 | INMATE NAME & CDC NUMBER: | JANOE J25333 |

The above case was evaluated for referral to the Imperial County District Attorney and the following decision was made:

_____ Report returned to involved staff for more data:
_____ Investigation being conducted by Security and Investigations:
X No referral to the District Attorney will be made since:

- _____ There was no significant injury.
- _____ Potential for injury existed, but victim will not testify
- _____ Prima facie evidence exists, but there is insufficient data for other than administrative action.
- _____ Insufficient quantity of drugs for prosecution.
- _____ Problems exist with the chain of evidence.
- _____ Inmate has a long sentence and the most appropriate resolution will be effected via administrative disposition.
- _____ Not a referable offense.
- _____ Does not meet criteria of agreement with District Attorney.
- X Other WILL BE ISSUED A CDC-115 FOR POSSESSION OF STOLEN PROPERTY AND CHECK FRAUD. TO BE FILED BY OUTSIDE AGENCY IF FILED.
- _____ / / , this case was referred to the Imperial County District Attorney.
- _____ On / / , the Investigation Services Unit received written notice that the Imperial County District Attorney rejected / dismissed this case.
- X Any pending disciplinary action should be completed at this time and a closure report completed and Forwarded to the Associate Warden-Housing for distribution

The above is pursuant to revision of the California Code of regulations, Title 15 Section 3316, which allows for discretionary referral of criminal cases.

Any questions may addressed via the Captain, Security and Investigations Unit at extension 5340.

G. Stratton, Lt

G. Stratton, Lieutenant
Chief Investigator
Investigative Services Unit

RECEIVED
OCT 10 2006
By_____

Original: Incident Package

cc: AW A/B or C/D
Records
AW Custody
Inmate
Facility Lieutenant

# EXHIBIT

N

RECEIVED CAL APPEALS SEP 2 5 2006
RECEIVED CAL APPEALS SEP 2 9 2006
RECEIVED CAL APPEALS OCT 0 6 2006

**INMATE/PAROLEE APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region 1. CAL 2.
Log No. A 0602524 2.
Category 1

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| Bobby B. JANOE Janoe | J25333 | N/A | A-5-234 |

A. Describe Problem: I am appealing the finding of my guilt on serious rule violation 115 for fraud, by LT. Sigler. I still have not received the decision by LT. Sigler on that 115 hearing. see exhibit A, I have since been able to obtain my copy of the 115 from my property, (4 Pages). see exhibit B. Apparently from april 2006 to july 2006 my brother bret Janoe was mailing stolen money orders and/or checks for deposit to my trust account, without my knowledge. At the 115 hearing I submitted a declaration from myself; my brother brian Janoe; and my mother Marilyn Janoe, to explain what occured as best as we knew. see exhibit C. After the Cont. p. 2

If you need more space, attach one additional sheet.

B. Action Requested: Reverse the finding of guilt on the serious rule violation 115 for fraud. Remove all references of serious rule violation (115) Log # 07-06-A-005 from my file.

Inmate/Parolee Signature: Bobby B. Janoe Date Submitted: 9/21/06

C. INFORMAL LEVEL (Date Received: ________ )

Staff Response:

Staff Signature: ________ Date Returned to Inmate: ________

D. FORMAL LEVEL

If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

CSP-CAL-BYPASS

Signature: ________ Date Submitted: ________

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

RECEIVED DEC 18 2006 INMATE APPEALS BRANCH

SCREENED OUT SEP 2 5 2006
SCREENED OUT SEP 2 9 2006
SCREENED OUT OCT 0 6 2006

CAL A 0602524

RECEIVED CAL APPEALS SEP 2 5 2006
RECEIVED CAL APPEALS SEP 2 9 2006

CAL A 0602524

RECEIVED CAL APPEALS OCT 0 6 2006
RECEIVED CAL APPEALS OCT 2 0 2006

[...]tion 115 hearing I found out bret Janoe was found dead in San Bernardino see Exhibit D. I believe bret was suffering from dementia and coupled with the methamphetamine he was using and also alcohol that his cognitive skills at best were rudimentary. I had no Knowledge bret was sending stolen money orders and/or checks for deposit to my trust account. I Never saw any of the money orders and/or checks as they arrived at the trust account office for deposit on to my trust account. yes I did receive the envelopes from bret, but there were no letters with them, except the one letter squad office confiscated as it arrived at the institution prior to be delivered to me. How could I have Knowledge that the money orders and/or checks arriving at the institution were in fact stolen? under California law, the indispensable elements of a fraud claim include a false representation; knowledge of its falsity; intent to defraud; justifible reliance and damages. see vess v ciba-Geigy Corp USA 317 F3d 1097 2003. Had I received the letter from bret detailing his scam I would have notified officer rodriguez (second watch 1, building A yard) immediately. Had I received any of the altered money orders and/or checks in the envelopes, I would have notified officer rodriguez immediately. I would like to state I take responsibility for the funds the state lost. I believe it was 530.00 dollars. I will pay this amount back to the state, but I am just as much a victim of my brothers (bret Janoe) scam as the state was. I had not spoken to My brother for 20 years. He is not on my visiting list, his address was not in my address book and I did not even have a photo of him in My property.

SCREENED OUT SEP 2 5 2006

SCREENED OUT OCT 0 6 2006
SCREENED OUT SEP 2 9 2006

Page 2 continuance from setion H

alcohol use, rendered his cognitive skills at best as rudimentary. As a prisoner housed in California Department of corrections and rehabilitation, I have no control what so ever, over what someone mails into the institution in my Name.

Now when you look at all the staff reports (see exhibit b) they document how they discovered stolen money orders and/or checks were being mailed to the institution in my Name. On 8/4/06 LT. Gigler held a hearing on this serious rule violation and at p.6 of 12 found me guilty, based on the before mentioned reports by officers. What you will Notice missing is any tangable evidence substantiating I knew that bret Jarve was mailing stolen money orders and/or checks to the institution in my Name. Additionally when you review the copies of the checks the staff provided to me (see exhibit B) you will notice everyone is altered and was so when they arrived at the trust account office; consequently, trust account officials here at the institution should never have processed those obviously altered money orders and/or checks. At the 2nd level response at p.3 trust account officials were questioned by CC II Mr. Bell, as to how obviously altered money orders and/or checks were in fact processed onto my trust account? The trust account official stated " we should have visually caught it in the beginning, due to you could tell inmate Jarve's Name was obviously typed over the original name printed on the check". It should be noted, when trust account officials would post these stolen money orders and/or checks onto my account, they immediately would withdraw 20% and forward to the state and federal courts, as I owed for filing fees in these courts and this accounted for approximately 364.00 dollars. I spent 75.00 dollar at canteen and sent 99.00 dollars to my mother, for a total of approximately 530.00 dollars.

To sustain a conviction for "possession of stolen property" three prongs must be established, 1) the property must be stolen; 2) defendant must know

the property is stolen; and 3) defendant must have had possession of the stolen property. see People v Myles 50 Cal app3d 423 (1975). In this instance, there is no evidence that I knew the money orders and/or checks that were arriving at the institution trust account office were stolen; nor did I ever have possession of the money orders and/or checks in question.

To sustain a conviction for check fraud; the defendant must present the check as genuine; knowing it is not; with the intent to defraud. People v Jackson 92 Cal app3d 556 (1979). An intent to defraud is an intent to deceive another person for the purpose of gaining a material advantage over the other person. People v Booth 48 Cal app 4th 1247 (1996). In this instance, there is no evidence that I tried to present these stolen money orders and/or checks to the trust account office for deposit onto my trust account. They all went directly from bret Jarvie via the u.s mail to the trust account office.

There is no "preponderance of evidence" that I knew the stolen money orders and/or checks being mailed to the institution by bret Jarvie were in fact stolen. I never even saw any of them, I did not present them to the trust account office for deposit on to my account either. LT. Sigler is basing his decision of my guilt on the fact the stolen money orders and/or checks were mailed to the institution in my name and since I am housed at Calipatria state prison, as a convicted felon, I am presumed guilty of every subsequent allegation. It should also be noted, I take full responsibility for the funds the state lost. It should also be noted, the Calipatria state prison investigative services unit declined to even refer this matter to the district attorney. (see attached case referral sheet). As such, the guilt finding should be reversed and all references of the 115 should be removed from my file.

State of California Department of Corrections and Rehabilitation

# Memorandum

Date: DEC - 6 2006

To: Janoe, J-25333
Calipatria State Prison

Subject: SECOND LEVEL APPEAL RESPONSE
LOG NO.:CAL-A-06-02524

ISSUE:

The appellant is submitting this appeal relative to CDC Form 115, Rules Violation Report (RVR), Log #07-06-A-005, dated July 05, 2006, for Possession of Stolen Property and Check Fraud. It is the appellant's position that on Friday, August 04, 2006, Senior Hearing Officer (SHO) J. Sigler, inappropriately violated your due process rights by finding you guilty of the aforementioned RVR. You allege you had no knowledge that your brother Bret Janoe was depositing stolen money orders and checks into your inmate trust account at Calipatria State Prison (CAL). You state you never had possession or seen the money orders that were sent to you, due to they were deposited into your inmate trust account by accounting staff personnel. You state Bret was arrested on May 31, 2006, by the San Bernardino Sheriffs Department, Twin Peaks, for burglary of a United States Post Office. You state there was insufficient evidence presented at your hearing, that you had knowledge that the money orders deposited into your trust account were stolen.

You are requesting on appeal that the findings of your guilt in the matter be rescinded.

INTERVIEWED BY: D. Bell, Correctional Counselor II, on November 28, 2006.

REGULATIONS: The rules governing this issue are:

**California Penal Code Section 12022.7. Infliction of Great Bodily Injury**

**California Code of Regulations, Title 15, Section (CCR) 3005. Conduct.**

**CCR 3084.5. Levels of Appeal Review and Disposition.**

**CCR 3313. Classification of Rules Violation Report and Notice of Pending Charges.**

**CCR 3320. Hearing Procedures and Time Limitations.**

On July 12, 2006, you were served a pre-hearing copy of RVR, Log #07-06-A-005, dated July 05, 2006, for the specific act of Possession of Stolen Property and Check Fraud, and served a copy of CDC-115 Supplement

authored by Correctional Officer (CO) V. Canada. On August 03, 2006, you were served a copy of Incident Report # CAL-CEN-06-07-0224.

On July 17, 2006, you were served Xerox copies of your inmate trust account statements from May 01, 2005 to June 2005. You were also served a copy of the CDC 193 Trust Account Withdrawal Order to Marilyn Janoe dated May 25, 2006, one (1) inmate letter, six (6) Xerox copies of inmate correspondence envelopes to you, from your brother Brett Janoe, Box 651 Running Springs CA. 92382, two (2) Xerox copies of checks paid to the order of Bobby Janoe, J25333, and two (2) copies of money orders paid to the order of Bobby Janoe.

On August 04, 2006, at approximately 1505 hours, you appeared before an experienced SHO, J. Sigler, for the adjudication of the RVR. You plead not guilty, and elected to make the following statement: "I have not seen my brother in over twenty years. The last time I saw him he stole property from me and my mom, and then he disappeared. I am surmising that he took it and sold it for money, now this is twenty years later etc."

The SHO considered your statement at the time of the hearing. The SHO noted that he reviewed the three (3) typed declarations that you presented at your hearing from you, your mother and brother Brian Scott.

You were found guilty of Possession of a Stolen Property and Check Fraud, a Division "B" offense and assessed 150 days forfeiture of credit, and 90 days loss of phone, ten (10) days loss of yard, and 90 days temporary placement in privilege group "C" in accordance with CCR, Title 15, Section 3044(f)(1)(B), starting on August 04, 2006, and ending on November 03, 2006, consistent with a Division "B" offense.

You were found guilty based upon the preponderance of evidence submitted at the hearing, which was considered valid and substantiated the charge. The evidence included: Information contained in Incident Package Log #CAL-CEN-06-07-0244, CDC-837 authored by CO, S. Crittendon, dated July 11, 2006, CDC-837 Supplemental Report authored by CO, V. Canada, CDC-Supplemental Report authored by Accounting Clerk II, P. Weitzel, CDC-Supplemental Report authored by G. Shepard, 2nd CDC-115 Supplemental Report authored by CO, V. Canada, and 17 photocopies of evidence collected and/or recovered from your cell.

1. The Reporting Employee's written report which states, "On Wednesday, July 05, 2006, Security and Investigations concluded its investigations into numerous altered checks received at Calipatria State Prison for Inmate Janoe, J-25333, A1-150." 2. Four (4) out of Five (5) of the checks noted on CDC-115-C page #11 was deposited into your inmate trust account were confirmed stolen by the Security and Investigations Unit.

On August 15, 2006, the SHO's finding and disposition were reviewed and affirmed by a Chief Disciplinary Officer. On August 24, 2006, you were issued the final copy of the adjudicated RVR.

The Second Level of Review (SLR) notes although you were not in a position to view the incoming checks, you received monthly statements from the Calipatria State Prison's Accounting Department. These statements indicated deposits

had been made to your account, which would have given you knowledge of your account activity and current funds available.

It is also noted a cash withdrawal in the amount of $530.30 was withdrawn from your account prior to the CAL Accounting Office discovery of the altered checks. A review of your trust account statement and activity prior to the $2,021.51 dollar deposits on April 27, 2006, clearly indicated your previous account balance was zero.

It is noted on December 05, 2006, Correctional Counselor II, Inmate Appeals Coordinator, D. Bell, interviewed CAL Inmate Trust Account Office Technician, W. Neciuk, as to why were the checks and money orders processed and deposited into your trust account when it appeared that the checks were altered and fraudulent. Mr. Neciuk stated, "We should have visually caught it in the beginning, due to you could tell inmate Janoe's name was obviously typed over the original name printed on the check. However, we eventually caught on, flagged his incoming checks and sent copies to the Security and Investigations Unit. Prior to these checks being placed into inmate Janoe's account, he had no prior activity what so ever. He never had spent any money on canteen. However, after the checks were deposited into his accounts he spent money on canteen, and he even sent money to his mom."

The SLR notes Detective Pelkey of the San Bernardino Sheriff's Department, Twin Peaks, confirmed that your brother Bret Harvey Janoe and two (2) other suspects were arrested on May 30, 2006, for burglary of a United States Post Office.

After reviewing the processing of your RVR, it was determined that time constraints were met, procedures were followed, and due process was afforded to you. You provided no new or compelling evidence to the RVR. Therefore, I find no reason to alter the original decision.

DECISION: The appeal is denied.

The appellant is advised that this issue may be submitted for a Director's Level of Review if desired.

T. OCHOA
Chief Deputy Warden (A)
Calipatria State Prison

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

# DIRECTOR'S LEVEL APPEAL DECISION

Date: MAR 1 4 2007

In re: Janoe, J-25333
Calipatria State Prison
P.O. Box 5002
Calipatria, CA 92233

IAB Case No.: 0607129 Local Log No.: CAL 06-02524

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner R. Floto. All submitted documentation and supporting arguments of the parties have been considered.

I APPELLANT'S ARGUMENT: The appellant is submitting this appeal relative to CDC Form 115, Rules Violation Report (RVR), Log #07-06-A-005, dated July 5, 2006, for "Possession of Stolen Property and Check Fraud," a Division "B" offense. He claims that his due process rights were violated by finding him guilty of the offense. It is the appellant's position that he is not guilty of the RVR as charged. He requests dismissal of the RVR.

II SECOND LEVEL'S ARGUMENT: The reviewer found that the appellant was afforded all of his due process rights, including a fair and unbiased hearing. On July 5, 2006, the Security and Investigations Unit concluded an investigation regarding altered checks received by the appellant. He had received checks for $5,727.19 and $5,190.87, which had been determined to be altered. Investigation revealed that the appellant had received ten additional altered checks from his brother from April 27, through May 30, 2006, totaling $3,771.71. The appellant had utilized some of the funds and was provided copies of his trust account balances that reflected deposit and withdrawal activities. The appellant was found guilty based upon a preponderance of evidence by an impartial Senior Hearing Officer (SHO). The appellant was assigned an Investigative Employee (IE) to assist him in the gathering of evidence. The SHO utilized the IE report during the hearing to render a decision. The appellant was assigned an Investigative Employee (IE) to assist him in the gathering of evidence. The SHO utilized the IE report during the hearing to render a decision. The appellant did not meet the criteria for the assignment of a Staff Assistant as there was no need for a confidential relationship; the issues are not complex; and the appellant is not illiterate and understands English. The appellant waived that witnesses be present at the hearing.

III DIRECTOR'S LEVEL DECISION: Appeal is denied.

A. FINDINGS: The appellant was afforded all due process rights in the adjudication of the RVR and all procedural guidelines were met. A preponderance of evidence was established by an impartial SHO to sustain the guilty finding. Reports reflect that the appellant has presented no new or compelling evidence in the appeal, which would warrant a modification of the decision reached by the institution.

B. BASIS FOR THE DECISION:
California Code of Regulations, Title 15, Section: 3012, 3315, 3320, 3323

C. ORDER: No changes or modifications are required by the institution.

JANOE, J-25333
CASE NO. 0607129
PAGE 2

This decision exhausts the administrative remedy available to the appellant within CDCR.


N. GRANNIS, Chief
Inmate Appeals Branch

cc:     Warden, CAL
        Appeals Coordinator, CAL

00229

# LODGMENT 10

RECEIVED IN CRIMINAL DOCKETING

NOEMI

COURT OF APPEAL - FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

FILED
Stephen M. Kelly, Clerk
NOV 6 2007
Court of Appeal Fourth District

| In re BOBBY S. JANOE on Habeas Corpus. | D051373 (San Diego County Super. Ct. No. EHC 00868) |
|---|---|

THE COURT:

The petition for writ of habeas corpus has been read and considered by Justices Huffman, Nares and Irion.

Petitioner was convicted of murder in 1994 for killing his wife and is presently incarcerated at Calipatria State Prison. Petitioner argues his due process rights were violated at an administrative hearing when he was found guilty of a serious rules violation for possession of stolen property and check fraud. He was assessed 150 days forfeiture of credit and the temporary loss of other privileges.

Petitioner received notice of the charges, a hearing and an opportunity to present evidence in his defense, a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action, and full administrative appeal of his rules violation. Petitioner has therefore been afforded all the process due to him. (*Wolff v. McDonnell* (1974) 418 U.S. 539, 563-567.)

To the extent petitioner argues the rules violation is supported by insufficient evidence because he had no knowledge the checks were altered or stolen, we only need to find "some evidence" to support the administrative decision. (*Superintendent v. Hill* (1985) 472 U.S. 445, 455-456; *In re Zepeda* (2006) 141 Cal.App.4th 1493, 1498.) This standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." (*Superintendent v. Hill*, *supra*, 472 U.S. at pp. 455-456.) As explained in his administrative appeals and by the trial court, petitioner's trust account

went from zero dollars on April 27, 2006, to almost $5,000 dollars by May 30, 2006, when fraudulent checks from petitioner's brother were mailed to petitioner and deposited in his account. Petitioner received monthly statements from the Calipatria State Prison accounting department indicating the deposits were made. Petitioner withdrew money from his account to purchase canteen items and sent money to his mother. Envelopes from petitioner's brother were found in his cell bearing statements such as, "Say brother, let me know what you need!" and "I'll send more money in a couple days!" Additionally, a letter from petitioner's brother to petitioner instructed petitioner to take half of the money and send the other half back to his brother in a state issued check. Petitioner wrote his brother thanking him for the money. Petitioner states in his administrative appeal he "takes full responsibility for the funds the state lost." Because this constitutes "some evidence" to support the administrative decision, we deny the petition. (*Id.* at pp. 455-456; *In re Zepeda*, *supra*, 141 Cal.App.4th at p. 1498.)

The petition is denied.

HUFFMAN, Acting P. J.

Copies to: All parties

2007 NOV -6 PM 3:43