```
REPORT ID: TS3030                                    REPORT DATE: 06/27
                                              CAL    A-0602524
      RECEIVED CAL APPEALS SEP 2 9 2006 CALIPATRIA STATE PRISON
                              INMATE TRUST ACCOUNT STATEMENT

      RECEIVED CAL APPEALS OCT 0 6 2005
                           FOR THE PERIOD: JUN. 01, 2005 THRU JUN. 27, 2005

ACCT: J25333        ACCT NAME: JANCE, BOBBY SHAWN          ACCT TYPE: I
          RECEIVED CAL APPEALS OCT 2 0 2005
      TRAN
DATE  CODE  DESCRIPTION      COMMENT   CHECK NUM  DEPOSITS  WITHDRAWALS  BALANCE
```

| DATE | CODE | DESCRIPTION | COMMENT | CHECK NUM | DEPOSITS | WITHDRAWALS | BALANCE |
|------|------|-------------|---------|-----------|----------|-------------|---------|
| 05/05 | W220 | STATE FILING | 15606/5943 | | | 69.79 | 4,583.35 |
| 05/08 | FC01 | DRAW-FAC 1 | A1 | 5964 | | 76.00 | 4,507.35 |
| 05/15 | FR01 | CANTEEN RETUR | 506113 | | 76.00 | | 4,583.35 |
| 05/16 | W415 | CASH WITHDRAW AID | 6161 111079976 | | | 99.00 | 4,484.35 |
| 05/19 | W516 | LEGAL COPY CH 4/8 | 6255 | | | 0.20 | 4,484.15 |
| 05/19 | W516 | LEGAL COPY CH 4/8 | 6255 | | | 5.50 | 4,478.65 |
| 05/19 | W516 | LEGAL COPY CH 4/12 | 6255 | | | 0.10 | 4,478.55 |
| 05/19 | W513 | MISC. CHARGES ENVEL | 6256 | | | 0.45 | 4,478.10 |
| 05/19 | W513 | MISC. CHARGES ENVEL | 6261 | | | 1.80 | 4,476.30 |
| 05/19 | W513 | MISC. CHARGES ENVEL | 6261 | | | 45.50 | 4,430.80 |
| 05/23 | W512 | LEGAL POSTAGE 04/19 | 6320 | | | 0.87 | 4,429.93 |
| 05/23 | W516 | LEGAL COPY CH 05/19 | 6316 | | | 0.30 | 4,429.63 |
| 05/23 | W513 | MISC. CHARGES ENVELP | 6330 | | | 0.45 | 4,429.18 |
| 05/23 | W513 | MISC. CHARGES ENVELP | 6330 | | | 0.15 | 4,429.03 |
| 05/24 | W512 | LEGAL POSTAGE 4/21 | 6356 | | | 4.05 | 4,424.98 |
| 05/24 | W512 | LEGAL POSTAGE 4/21 | 6356 | | | 4.05 | 4,420.93 |
| 06/05 | FC01 | DRAW-FAC 1 | A1 | 6540 | | 75.00 | 4,345.93 |

```
                          CURRENT HOLDS IN EFFECT
```

| DATE PLACED | HOLD CODE | DESCRIPTION | COMMENT | HOLD AMOUNT |
|-------------|-----------|-------------|---------|-------------|
| 06/14/2006 | H118 | LEGAL COPIES HOLD | 06/13 6807 | 0.90 |

```
                          TRUST ACCOUNT SUMMARY
```

| BEGINNING BALANCE | TOTAL DEPOSITS | TOTAL WITHDRAWALS | CURRENT BALANCE | HOLDS BALANCE | TRANSACTIONS TO BE POSTED |
|-------------------|----------------|-------------------|-----------------|---------------|---------------------------|
| 7.88 | 4,909.53 | 571.48 | 4,345.93 | 0.90 | 0.00 |

```
                                              CURRENT
                                              AVAILABLE
                                              BALANCE
                                              ----------
                                              4,345.03
```

SCREENED OUT   SEP 2 9 2005   SCREENED OUT   OCT 0 6 2006          00304

# EXHIBIT

K

RECEIVED CAL APPEALS   SEP 2 5 2006
RECEIVED CAL APPEALS   SEP 2 0 2006

**Division of Medical Examiner**
175 South Lena Road
San Bernardino, CA 92415-0035
RECEIVED CAL APPEALS SEP 2 9 2006
(909) 387-2561
Fax (909) 387-2989

RECEIVED CAL APPEALS   OCT 0 6 2006

CAL   A 0602524

**Frank Sheridan, M.D.**
Chief Medical Examiner

**Eugene Carpenter**
_____, M.D., Deputy M.E.



**San Bernardino County Sheriff's Department**
**Coroner Division**

RECEIVED CAL APPEALS   OCT 2 0 2006
**Autopsy Protocol**

**Coroner's Case Number:** 06-5661LD

**Autopsy Number:** A-0394-06

**Name:** Brett Harvey Janoe   **Age:** 44   **Sex:** Male
**Time of Death:** Reported Found 0739 hours, July 21, 2006   **Race:** Caucasian
**Time of Autopsy:** 0900 hours, July 28, 2006
**Place of Autopsy:** San Bernardino County Coroner's Facility   **Deputy:** De Nardo

**HISTORY OF DEATH**: This is the case of a 44-year-old Caucasian male found floating in about 2 feet of water in a flood basin area. There is a past history of social distress, methamphetamine use, and possibly of diabetes. There is no history of foul play or trauma. There are no signs of trauma. Other past medical history is not given. Drug use and social stress have been the problems. No history of suicide ideation or previous suicide attempts has been given.

There is a history of pelvic fracture from a fall in the fairly recent past.

Also refer to Coroner's Investigative Report 06-5661LD.

**External Examination for Identification and for Signs of Natural Pathology**:

This is the body of a 44-year-old, well-developed, well-nourished Caucasian male, about 73 inches in length and weighing 169 pounds. It has been refrigerated and is not embalmed. The body is identified by tags.

The major identifying characteristics consist of a long body, brown, medium length, straight hair, brown eyes (might be obscured by decomposition changes), handlebar moustache, unshaven face for about a week, no teeth, upper dental plate, uncircumcised penis, well-developed and not obese body; no signs of amputations, deformities, or needle track scars are seen. There are two tattoos discovered. The body is moderately decomposed and this obscures surface findings. The following is what can be discerned through the discoloration and the skin slippage.

The skin, head, head hair, eyes, ears, nose, mouth, throat, neck, chest, abdomen, pelvis with external genitalia and anus, back and extremities are all unremarkable for signs of natural pathology as best as can be seen through the obscuring signs of decomposition.

**Clothing**: There is clothing on the body. It consists of a tee shirt, boxer shorts, blue jeans with wide brown belt, white socks, and white running shoes. All of the clothing is soaked and muddy. Abundant numbers of papers are found, some of which have been placed in a plastic envelope apparently by the decedent. All of these are retrieved and are cleaned and spread out on a table for drying. No other articles are found within the pockets of the pants. There does not seem to be the presence of a suicide note, but the papers are not examined in detail at this time.

RECEIVED CAL APPEALS  SEP 2 0 2006
RECEIVED CAL APPEALS  OCT 2 0 2006

JANDE AUTOPSY CONTINUED
RECEIVED CAL APPEALS  SEP 2 0 2006
PAGE 2
A-0394-06
RECEIVED CAL APPEALS  SEP 2 9 2006

CAL    A  0602524

### Evidence of Postmortem Changes:

RECEIVED CAL APPEALS  SEP 2 0 2006

1. Moderate decomposition is present with universal green-brown discoloration and skin slippage. There is moderate bloating of the abdomen and scrotum. The eyes are soft. About 7 to 8 mL of fresh appearing red blood is found within the heart. The gallbladder and urinary bladder are dry. There are about 20 mL of a wine-like decomposition fluid found within the left pleural space. The right pleural space is dry. The peritoneum is dry. There is no oil. Maggots and fly eggs are not seen. Animal activity is not seen.
2. Rigor mortis: the arms are loose. There is moderate rigor mortis in the lower extremities.
3. Lividity: lividity cannot be assessed.

### Evidence of Medical Intervention: None

### Evidence Collected at Autopsy:

1. Liver and kidneys for toxicology.
2. One tube of blood for toxicology, from the heart.
3. Tissues from the major organs.

**Tattoos:** Two tattoos are seen. One is a none understood design with the word "Crazy" at the top. This is at the left lateral arm. The other is the name "Lori" written over the top surface of the shaft of the penis.

**Radiographs:** None

### Incisions:

1. Head, coronal.
2. Chest, Y-shaped.
3. Abdomen, midline.
4. Throat, midline.

**Examination and Description of Injuries:** Old bruises are present at the upper posterolateral pelvis. The larger is 2 inches and about 1 inch below it is the 1-1/2 inch bruise. They seem older, consistent with the history, but this is not clear due to the decomposition that obscures the findings. No incisions are made into them. No samples are collected. Other signs of trauma are lacking. The head is carefully examined. The brain is a gray-green pultaceous mass without signs of blood or other signs of trauma. There are no sharp force injuries or gunshot wounds to the body.

### Internal Examination for Signs of Natural Pathology:

A. BODY CAVITIES:

1. Head: The cranium and potential spaces of the head are unremarkable.

2. Chest: Unremarkable, except for decomposition.

3. Abdomen: Unremarkable, except for moderate decomposition.

4. Pelvis: Unremarkable, except for decomposition.

SCREENED OUT    SEP 2 8 2006    SCREENED OUT    SEP 2 9 2006    SCREENED OUT    OCT    00307

Case 3:08-cv-00420-JLS-POR    Document 12-15    Filed 07/11/2008    Page 5 of 22

RECEIVED CAL APPEALS   SEP 2 0 2006
RECEIVED CAL APPEALS   SEP 2 5 2006
RECEIVED CAL APPEALS   SEP 2 9 2006
RECEIVED CAL APPEALS   OCT 0 6 2006
RECEIVED CAL APPEALS   OCT 2 0 2006

CAL    A  0602524

JANOE AUTOPSY CONTINUED
PAGE 3

B. SYSTEMS:

1. Central Nervous: The brain is 1245 grams. It consists of a slightly formed gray-green pultaceous mass with some preservation of the surface architecture. It is scooped out of the skull. There are no collections of blood nor are there any signs of pathology that might be seen beyond the obscuration of the decompositional process.

2. Cardiovascular: The heart is 345 grams. It appears enlarged. The estimated weight before decomposition is 445 grams. The left main coronary artery is 60% atherosclerotic with a 2 x less than 1 mm. residual space. The circumflex is 70% occluded near its origin. The left anterior descending branch is 80% occluded in many focal areas, especially proximally. The right coronary artery is unremarkable. Otherwise, the heart with its pericardial sac, epicardium, coronary arteries, myocardium, endocardium and valves is unremarkable. The aorta with its branches and the vena cava with its tributaries are unremarkable. The pulmonary arteries are unremarkable and there are no signs of thromboemboli.

3. Respiratory: The airway is clear. There are no signs of inflammation. The lungs are unremarkable, except for obvious anthracosis.

4. Gastrointestinal: The GI tract, liver, gallbladder and pancreas are all unremarkable. The GI tract is examined by visualization and palpation. No collections of blood are seen. No stones are felt in the gallbladder.

5. Lymphoid: The spleen is moderately enlarged. The estimated weight is 400 grams. The lymph nodes are not prominent.

6. Genitourinary: The kidney both appear hyperplastic. The estimated weight is about 230 grams for each kidney. The surface is smooth. There are no pitted scars. The kidneys, ureters, urinary bladder, prostate and testicles are unremarkable. The prostate and testicles are examined by palpation.

7. Endocrine: The pituitary is not seen. The thyroid and adrenal glands are unremarkable.

8. Musculoskeletal: Unremarkable

**TOXICOLOGY:** A standard coroner's panel is requested.

**Also refer to Toxicology Report**

SCREENED OUT   SEP 2 0 2006        SCREENED OUT   SEP SCREENED OUT   or        00308

RECEIVED CAL APPEALS   SEP 2 5 2006
RECEIVED CAL APPEALS   SEP 2 0 2006
JANOE AUTOPSY CONTINUED
RECEIVED CAL APPEALS   SEP 2 9 2006
A-0394-06 CAL APPEALS   OCT 0 6 2006
RECEIVED CAL APPEALS   OCT 2 0 2006

CAL    A   0602524

**DIAGNOSIS**:
I.   Severe atherosclerotic heart disease.
II.  Signs of old trauma to the right posterolateral pelvic region, no signs of complications.
III. Drowning.
IV.  History of methamphetamine use (see toxicology report) (33 mg/L blood level).
V.   No history of foul play.
VI.  History of social stress and strain and difficult drug problem.

**CAUSE OF DEATH**: Probable drowning, unknown.   Contributing Causes: 1) Chronic methamphetamine use. 2) Atherosclerotic heart disease.

**Manner of Death**: Natural

**How injury occurred**: Probable cardiac event due to heart disease and drug use; then drowned.

**WITNESSES PRESENT**: Detective John Munoz, Forensic Specialist Ricardo Tomboc, San Bernardino Police Department.

Autopsy Completed 1030 hours, July 28, 2006.

Eugene Carpenter, M.D.
Pathologist

Date: _8-29-6_

EC:pm

SCREENED OUT      SEP 2 0 2006
SCREENED OUT      SEP 2 5 2006
SCREENED OUT      SEP 2 9 2006      SCREENED OUT      OCT      00309

# EXHIBIT

L

RECEIVED CAL APPEALS    SEP 2 0 2006
RECEIVED CAL APPEALS    SEP 2 5 2006
RECEIVED CAL APPEALS    SEP 2 9 2006
RECEIVED CAL APPEALS    OCT 0 6 2006
RECEIVED CAL APPEALS    OCT 2 0 2006

CAL    A    0602524



# County of San Diego

GLENN N. WAGNER, D.O.
CHIEF MEDICAL EXAMINER

CHRISTINA STANLEY, M.D.
CHIEF DEPUTY MEDICAL EXAMINER

**OFFICE OF THE MEDICAL EXAMINER**
5555 OVERLAND AVE., Ste 1411, SAN DIEGO, CALIFORNIA 92123-1245
TEL: (858) 694-2895  FAX: (858) 495-5956

## TOXICOLOGY REPORT

**Name:**  JANOE, Brett Harvey

**SBCCO Number:**  06-05661 LD
**Autopsy Number:**  A0394-06 EC

**Date of Death:**  07/21/2006

**Pathologist:**  Eugene Carpenter, M.D.

**Specimens Received:**  Heart Blood, Kidney, Liver

| Test Name (Method of Analysis) | Specimen Tested | Result |
|---|---|---|
| **Alcohol Analysis (GC)** | Heart Blood | |
|     Alcohol (Ethanol) | | 0.06 % (w/v) |
|     Acetone, Methanol, Isopropanol | | Not Detected |
| **Drugs of Abuse Screen (ELISA)** | Heart Blood | |
|     Cocaine metabolites | | Not Detected |
|     Opiates | | Not Detected |
|     Amphetamines | | Presumptive Positive |
|     Benzodiazepines | | Not Detected |
|     Fentanyl | | Not Detected |
|     Cannabinoids | | Not Detected |
| **Amphetamines (GC/MS)** | Heart Blood | |
|     Methamphetamine | | 0.33 mg/L |
|     Amphetamine | | Not Detected |
|     Ephedrine | | Not Detected |
|     Pseudoephedrine | | Not Detected |

End Results

**Comment:**

These results would be consistent with the use of alcohol and methamphetamine.

EC 8-29-6

Approved and Signed:    *Catherine E. Hamm*
08/18/2006
    Catherine E. Hamm
    Toxicologist III

Reviewed:    *J. L. Sherrard*
    James Sherrard
    Toxicologist II

00311

SCREENED OUT    SEP 2 0 2006    SCREENED OUT    SEP 2 9 2006
SCREENED OUT    SEP 2 5 2006    SCREENED OUT    OC

EXHIBIT

M

CALIPATRIA STATE PRISON

INVESTIGATIVE SERVICES UNIT

CASE REFERRAL TO

IMPERIAL COUNTY DISTRICT ATTORNEY

DATE:            10-02-06          INCIDENT REPORT NUMBER        CAL-CEN-06-07-0244

REPORT RECEIVED:    08-03-06          INCIDENT REPORT TITLE        THEFT IN EXCESS OF $500.00

REPORT DATED:      07-20-06          INMATE NAME & CDC NUMBER:    JANOE  J25333

The above case was evaluated for referral to the Imperial County District Attorney and the following decision was made:

_____ Report returned to involved staff for more data.

_____ Investigation being conducted by Security and Investigations:

___X___ No referral to the District Attorney will be made since:

           _____ There was no significant injury.

           _____ Potential for injury existed, but victim will not testify.

           _____ Prima facie evidence exists, but there is insufficient data for other than administrative action.

           _____ Insufficient quantity of drugs for prosecution.

           _____ Problems exist with the chain of evidence.

           _____ Inmate has a long sentence and the most appropriate resolution will be effected via administrative
                     disposition.

           _____ Not a referable offense.

           _____ Does not meet criteria of agreement with District Attorney.

           ___X___ Other    WILL BE ISSUED A CDC-115 FOR POSSESSION OF STOLEN PROPERTY AND
                     CHECK FRAUD.  TO BE FILED BY OUTSIDE AGENCY IF FILED.

           _____ ___/___/___, this case was referred to the Imperial County District Attorney.

           _____ On ___/___/___, the Investigation Services Unit received written notice that the Imperial
                   County District Attorney rejected / dismissed this case.

___X___ Any pending disciplinary action should be completed at this time and a closure report completed and
           Forwarded to the Associate Warden-Housing for distribution

The above is pursuant to revision of the California Code of regulations, Title 15 Section 3316, which allows for discretionary referral
of criminal cases.

Any questions may addressed via the Captain, Security and Investigations Unit at extension 5340.



G. Stratton, Lieutenant
Chief Investigator
Investigative Services Unit

Original: Incident Package

cc:       AW A/B or C/D
       Records
       AW Custody
       Inmate
       Facility Lieutenant



RECEIVED
OCT 10 2006
By_____

00313

EXHIBIT

N

RECEIVED CAL APPEALS SEP 2 5 2006

**INMATE/PAROLEE APPEAL FORM**

CDC 602 (12/87)

RECEIVED CAL APPEALS SEP 29 2006

| Location: Institution/Parole Region | Log No. | Category |
| 1. **CAL** | A – 0602524 | ① |
| 2. | 2. | |

RECEIVED CAL APPEALS OCT 0 6 2006

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME Abby ① B. JANOE ② Janoe | NUMBER J-25333 | ASSIGNMENT N/A | UNIT/ROOM NUMBER A-5-239 |

A. Describe Problem: I am appealing the finding of my guilt on serious rule violation 115 for fraud, by LT. Sigler. I still have not received the decision by LT. Sigler on that 115 hearing. See exhibit A. I have since been able to obtain my copy of the 115 from my property, (4 Pages). See exhibit B. Apparently from april 2006 to july 2006 my brother bret Janoe was mailing stolen money orders and/or checks for deposit to my trust account, without my knowledge. At the 115 hearing I submitted a declaration from myself; my brother brian Janoe; and my mother Marilyn Janoe, to explain what occured as best as we knew. See exhibit C. After the

Cont. p.2

If you need more space, attach one additional sheet.

B. Action Requested: Reverse the finding of guilt on the serious rule violation 115 for fraud. Remove all references of serious rule violation (115) Log # 07-06-A-005 from my file.

Inmate/Parolee Signature: _Abby S. Janoe_    Date Submitted: 9/25/06

C. INFORMAL LEVEL (Date Received: _____)

Staff Response: _____

Staff Signature: _____    Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

Signature: _____    Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

CSO CAL BYPASS

RECEIVED DEC 8 2006 INMATE APPEALS BRANCH

| CAL | A 0602524 |

SCREENED OUT SEP 2 5 2006
SCREENED OUT SEP 29 2006
SCREENED OUT OCT 0 6 2006

00315

RECEIVED CAL APPEALS   SEP 2 5 2006
RECEIVED CAL APPEALS   SEP 2 5 2006

CAL   A 0602524

RECEIVED CAL APPEALS   OCT 2 0 2005
RECEIVED CAL APPEALS   OCT 2 0 2005

115 hearing I found out bret Janue was found dead in San
Bernardino. See Exhibit D. I believe bret was suffering from
dementia and coupled with the methamphetamine he was using and
also alcohol that his cognitive skills at best were rudimentary.
I had no knowledge bret was sending stolen money orders and/or
checks for deposit to my trust account. I never saw any of the
money orders and/or checks as they arrived at the trust account office
for deposit on to my trust account. Yes I did receive the envelopes
from bret, but there were no letters with them, except the one
letter squad office confiscated as it arrived at the institution prior
to be delivered to me. How would I have knowledge that the
money orders and/or checks arriving at the institution were in fact
stolen? Under California law, the indispensable elements of a fraud
claim include a false representation; knowledge of its falsity; intent
to defraud; justifiable reliance and damages; see vess v ciba-Geigy
Corp USA 317 F3d 1097 1003. Had I received the letter from bret detailing
his scam I would have notified officer rodriguez (second watch 1, building
A yard) immediately. Had I received any of the altered money orders and/
or checks in the envelopes, I would have notified officer rodriguez
immediately. I would like to state I take responsibility for the funds
the state lost. I believe it was 590.00 dollars. I will pay this
amount back to the state, but I am just as much a victim of my
brothers (bret Janue) scam as the state was. I had not spoken to
my brother for 20 years. He is not on my visiting list, his address was
not in my address book and I did not even have a photo of him in
my property.

SCREENED OUT   SEP 2 5 2006

SCREENED OUT OUT   OCT SEP 6 2006 2005

2

00316

Page 2 continuance from setion H

alcohol use, rendered his cognitive skills at best as rudimentary. As a prisoner housed in California Department of corrections and rehabilitation, I have no control what so ever, over what someone mails into the institution in my name.

Now when you look at all the staff reports (see exhibit b) they document how they discovered stolen money orders and/or checks were being mailed to the institution in my name. On 8/4/06 LT. Gigler held a hearing on this serious rule violation and at pg. 6 of 12 found me guilty, based on the before mentioned reports by officers. What you will notice missing is any tangable evidence substantiating I knew that bret Jaroe was mailing stolen money orders and/or checks to the institution in my name. Additionally when you review the copies of the checks the staff provided to me (see exhibit B) you will notice everyone is altered and was so when they arrived at the trust account office; consequently, trust account officials here at the institution should never have processed those obviously altered money orders and/or checks. At the 2nd level response at p.3 trust account officials were questioned by CCII Mr. Bell, as to how obviously altered money orders and/or checks were in fact processed onto my trust account? The trust account official stated "we should have visually caught it in the beginning, due to you could tell inmate Jaroe's name was obviously typed over the original name printed on the check". It should be noted, when trust account officials would post these stolen money orders and/or checks onto my account, they immediately would withdraw 20% and forward to the state and federal courts, as I owed for filing fees in these courts and this accounted for approximately 364.00 dollars. I spent 15.00 dollar at canteen and sent 99.00 dollars to my mother, for a total of approximately 530.00 dollars.

To sustain a conviction for "possession of stolen property" three prongs must be established, 1) the property must be stolen; 2) defendant must know

00317

Page 3

the property is stolen; and 3) defendant must have had possession of the stolen property. see People v Myles 50 Cal app3d 423 (1975). In this instance, there is no evidence that I knew the money orders and/or checks that were arriving at the institution trust account office were stolen; nor did I ever have possession of the money orders and/or checks in question.

To sustain a conviction for check fraud, the defendant must present the check as genuine; knowing it is not; with the intent to defraud. People v Jackson 92 Cal app3d 556 (1979). An intent to defraud is an intent to deceive another person for the purpose of gaining a material advantage over the other person. People v Booth 48 Cal app 4th 1247 (1996). In this instance, there is no evidence that I tried to present these stolen money orders and/or checks to the trust account office for deposit onto my trust account. They all went directly from bret Janoe via the us mail to the trust account office.

There is no "Preponderance of evidence" that I knew the stolen money orders and/or checks being mailed to the institution by bret Janoe were in fact stolen. I never even saw any of them, I did not present them to the trust account office for deposit on to my account either. LT. Sigler is basing his decision of my guilt on the fact the stolen money orders and/or checks were mailed to the institution in my name and since I am housed at Calipatria state prison; as a convicted felon, I am presumed guilty of every subsequent allegation. It should also be noted, I take full responsibility for the funds the state lost. It should also be noted, the Calipatria state prison investigative services unit declined to even refer this matter to the district attorney. (see attached case referral sheet). As such, the guilt finding should be reversed and all references of the 115 should be removed from my file.

00318

State of California                                        Department of Corrections and Rehabilitation

# Memorandum

Date:    DEC - 6 2006

To:      Janoe, J-25333
         Calipatria State Prison

Subject: SECOND LEVEL APPEAL RESPONSE
         LOG NO.:CAL-A-06-02524

ISSUE:

The appellant is submitting this appeal relative to CDC Form 115, Rules Violation
Report (RVR), Log #07-06-A-005, dated July 05, 2006, for Possession of Stolen
Property and Check Fraud.   It is the appellant's position that on
Friday, August 04, 2006, Senior Hearing Officer (SHO) J. Sigler, inappropriately
violated your due process rights by finding you guilty of the aforementioned RVR.
You allege you had no knowledge that your brother Bret Janoe was depositing
stolen money orders and checks into your inmate trust account at Calipatria
State Prison (CAL).   You state you never had possession or seen the money
orders that were sent to you, due to they were deposited into your inmate trust
account by accounting staff personnel.   You state Bret was arrested on
May 31, 2006, by the San Bernardino Sheriffs Department, Twin Peaks, for
burglary of a United States Post Office.   You state there was insufficient
evidence presented at your hearing, that you had knowledge that the money
orders deposited into your trust account were stolen.

You are requesting on appeal that the findings of your guilt in the matter be
rescinded.

INTERVIEWED BY: D. Bell, Correctional Counselor II, on November 28, 2006.

REGULATIONS: The rules governing this issue are:

    California Penal Code Section 12022.7.  Infliction of Great Bodily Injury

    California Code of Regulations, Title 15, Section (CCR) 3005.  Conduct.

    CCR 3084.5.  Levels of Appeal Review and Disposition.

    CCR 3313.  Classification of Rules Violation Report and Notice of Pending
    Charges.

    CCR 3320.  Hearing Procedures and Time Limitations.

On July 12, 2006, you were served a pre-hearing copy of RVR,
Log #07-06-A-005, dated July 05, 2006, for the specific act of Possession of
Stolen Property and Check Fraud, and served a copy of CDC-115 Supplement

JANOE, J-25333
CAL-A-06-02524
PAGE 2

authored by Correctional Officer (CO) V. Canada.  On August 03, 2006, you were served a copy of Incident Report # CAL-CEN-06-07-0224.

On July 17, 2006, you were served Xerox copies of your inmate trust account statements from May 01, 2005 to June 2005.  You were also served a copy of the CDC 193 Trust Account Withdrawal Order to Marilyn Janoe dated May 25, 2006, one (1) inmate letter, six (6) Xerox copies of inmate correspondence envelopes to you, from your brother Brett Janoe, Box 651 Running Springs CA. 92382, two (2) Xerox copies of checks paid to the order of Bobby Janoe, J25333, and two (2) copies of money orders paid to the order of Bobby Janoe.

On August 04, 2006, at approximately 1505 hours, you appeared before an experienced SHO, J. Sigler, for the adjudication of the RVR.  You plead not guilty, and elected to make the following statement:  "I have not seen my brother in over twenty years.  The last time I saw him he stole property from me and my mom, and then he disappeared.  I am surmising that he took it and sold it for money, now this is twenty years later etc."

The SHO considered your statement at the time of the hearing.  The SHO noted that he reviewed the three (3) typed declarations that you presented at your hearing from you, your mother and brother Brian Scott.

You were found guilty of Possession of a Stolen Property and Check Fraud, a Division "B" offense and assessed 150 days forfeiture of credit, and 90 days loss of phone, ten (10) days loss of yard, and 90 days temporary placement in privilege group "C" in accordance with CCR, Title 15, Section 3044(f)(1)(B), starting on August 04, 2006, and ending on November 03, 2006, consistent with a Division "B" offense.

You were found guilty based upon the preponderance of evidence submitted at the hearing, which was considered valid and substantiated the charge.  The evidence included:  Information contained in Incident Package Log #CAL-CEN-06-07-0244, CDC-837 authored by CO, S. Crittendon, dated July 11, 2006, CDC-837 Supplemental Report authored by CO, V. Canada, CDC-Supplemental Report authored by Accounting Clerk II, P. Weitzel, CDC-Supplemental Report authored by G. Shepard, 2nd CDC-115 Supplemental Report authored by CO, V. Canada, and 17 photocopies of evidence collected and/or recovered from your cell.

1.  The Reporting Employee's written report which states, "On Wednesday, July 05, 2006, Security and Investigations concluded its investigations into numerous altered checks received at Calipatria State Prison for Inmate Janoe, J-25333, A1-150." 2.  Four (4) out of Five (5) of the checks noted on CDC-115-C page #11 was deposited into your inmate trust account were confirmed stolen by the Security and Investigations Unit.

On August 15, 2006, the SHO's finding and disposition were reviewed and affirmed by a Chief Disciplinary Officer.  On August 24, 2006, you were issued the final copy of the adjudicated RVR.

The Second Level of Review (SLR) notes although you were not in a position to view the incoming checks, you received monthly statements from the Calipatria State Prison's Accounting Department.  These statements indicated deposits

JANOE, J-25333
CAL-A-06-02524
PAGE 3

had been made to your account, which would have given you knowledge of your account activity and current funds available.

It is also noted a cash withdrawal in the amount of $530.30 was withdrawn from your account prior to the CAL Accounting Office discovery of the altered checks. A review of your trust account statement and activity prior to the $2,021.51 dollar deposits on April 27, 2006, clearly indicated your previous account balance was zero.

It is noted on December 05, 2006, Correctional Counselor II, Inmate Appeals Coordinator, D. Bell, interviewed CAL Inmate Trust Account Office Technician, W. Neciuk, as to why were the checks and money orders processed and deposited into your trust account when it appeared that the checks were altered and fraudulent.  Mr. Neciuk stated, "We should have visually caught it in the beginning, due to you could tell inmate Janoe's name was obviously typed over the original name printed on the check.  However, we eventually caught on, flagged his incoming checks and sent copies to the Security and Investigations Unit.  Prior to these checks being placed into inmate Janoe's account, he had no prior activity what so ever.  He never had spent any money on canteen. However, after the checks were deposited into his accounts he spent money on canteen, and he even sent money to his mom."

The SLR notes Detective Pelkey of the San Bernardino Sheriff's Department, Twin Peaks, confirmed that your brother Bret Harvey Janoe and two (2) other suspects were arrested on May 30, 2006, for burglary of a United States Post Office.

After reviewing the processing of your RVR, it was determined that time constraints were met, procedures were followed, and due process was afforded to you.  You provided no new or compelling evidence to the RVR.  Therefore, I find no reason to alter the original decision.

DECISION:  The appeal is denied.

The appellant is advised that this issue may be submitted for a Director's Level of Review if desired.

T. OCHOA
Chief Deputy Warden (A)
Calipatria State Prison

00321

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA  94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date:    MAR 1 4 2007

In re:    Janoe, J-25333
Calipatria State Prison
P.O. Box 5002
Calipatria, CA  92233

IAB Case No.: 0607129          Local Log No.: CAL 06-02524

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner R. Floto.  All submitted documentation and supporting arguments of the parties have been considered.

I    APPELLANT'S ARGUMENT:  The appellant is submitting this appeal relative to CDC Form 115, Rules Violation Report (RVR), Log #07-06-A-005, dated July 5, 2006, for "Possession of Stolen Property and Check Fraud," a Division "B" offense.  He claims that his due process rights were violated by finding him guilty of the offense.  It is the appellant's position that he is not guilty of the RVR as charged.  He requests dismissal of the RVR.

II    SECOND LEVEL'S ARGUMENT:  The reviewer found that the appellant was afforded all of his due process rights, including a fair and unbiased hearing.  On July 5, 2006, the Security and Investigations Unit concluded an investigation regarding altered checks received by the appellant.  He had received checks for $5,727.19 and $5,190.87, which had been determined to be altered.  Investigation revealed that the appellant had received ten additional altered checks from his brother from April 27, through May 30, 2006, totaling $3,771.71.  The appellant had utilized some of the funds and was provided copies of his trust account balances that reflected deposit and withdrawal activities.  The appellant was found guilty based upon a preponderance of evidence by an impartial Senior Hearing Officer (SHO).  The appellant was assigned an Investigative Employee (IE) to assist him in the gathering of evidence.  The SHO utilized the IE report during the hearing to render a decision.  The appellant was assigned an Investigative Employee (IE) to assist him in the gathering of evidence.  The SHO utilized the IE report during the hearing to render a decision.  The appellant did not meet the criteria for the assignment of a Staff Assistant as there was no need for a confidential relationship; the issues are not complex; and the appellant is not illiterate and understands English.  The appellant waived that witnesses be present at the hearing.

III    DIRECTOR'S LEVEL DECISION:  Appeal is denied.

A.    FINDINGS:  The appellant was afforded all due process rights in the adjudication of the RVR and all procedural guidelines were met.  A preponderance of evidence was established by an impartial SHO to sustain the guilty finding.  Reports reflect that the appellant has presented no new or compelling evidence in the appeal, which would warrant a modification of the decision reached by the institution.

B.    BASIS FOR THE DECISION:
California Code of Regulations, Title 15, Section: 3012, 3315, 3320, 3323

C.    ORDER:  No changes or modifications are required by the institution.

JANOE, J-25333
CASE NO. 0607129
PAGE 2

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:     Warden, CAL
        Appeals Coordinator, CAL

# LODGMENT 12

S159392

# IN THE SUPREME COURT OF CALIFORNIA

### En Banc

---

In re BOBBY S. JANOE on Habeas Corpus

---

The petition for writ of habeas corpus is denied.

SUPREME COURT
# FILED

JAN 1 6 2008

Frederick K. Ohlrich Clerk

_____
Deputy

_____
GEORGE
Chief Justice

00324